## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

| | |
|---|---|
| NEPA WHOLESALE, INC., a Florida Corporation, | Case No: *pending* |
| **Plaintiff**, | |
| v. | **COMPLAINT** |
| SAFA GOODS, LLC, a Florida Limited Liability Company, | **JURY TRIAL DEMANDED** |
| **Defendant**. | |
| _____/ | |

**Plaintiff**, NEPA WHOLESALE, INC., a Florida Corporation, by and through undersigned counsel, brings suit against **Defendant**, SAFA GOODS, LLC, a Florida Limited Liability Company, and as grounds would allege:

1.     This action is being brought by **Plaintiff** to eliminate **Defendant**'s wrongful dissemination and distribution in the United States (including in this District) of "HQD CUVIE" vape products/electronic cigarettes that are *not* intended for distribution inside the United States and, perhaps more importantly, that interfere with **Plaintiff**'s exclusive right to distribute the "HQD CUVIE" vape products/electronic cigarettes in the United States (and in this District).

2.     On or about September 5, 2020, **Plaintiff**, a high-end distributor of vape product/electronic cigarettes throughout the United States and in certain jurisdictions around the world, entered into an exclusive and evergreen distribution agreement with Shenzhen Hanquingda Technology Co., LTD., a manufacturer from China, for the exclusive sale and distribution of the "HQD CUVIE" vape products/electronic cigarettes throughout the United States. See copy of Exclusive Agency Sales Contract attached hereto as *Exhibit "A".*

3.      As part and parcel of the exclusive nature of the Agreement, **Plaintiff** receives distinctive packaging of the product in order to distinguish it from the sale of HQD CUVIE vape products distributed outside of the United States. See copy of **Plaintiff's** distinctive packaging of HQD CUVIE vape products in comparison to the infringing packaging, sold by the **Defendant**, product that is most likely distributed outside of the United States, *Exhibit "B"* hereto.

4.      On or about April 2022, **Plaintiff** entered into a transactional relationship with **Defendant** for the first time by selling a series of vape products unrelated to the instant matter to **Defendant**. See invoices for initial purchases made by **Defendant** attached hereto as *Exhibit "C"*. All payments due and owing were made at **Plaintiff's** offices in West Palm Beach, Florida.

5.      On or about May 22, 2022, **Plaintiff** and **Defendant** began discussing the purchase of **Plaintiff's** exclusively distributed "HQD" products. **Plaintiff** sent **Defendant** an invoice to this end as attached hereto as *Exhibit "D"*. Ultimately, the contemplated purchase did not occur.

6.      At that time, **Defendant** was duly and specifically advised of the exclusive nature of **Plaintiff's** distribution of the HQD vape products/electronic cigarettes. See **Plaintiff's** promotional materials announcing **Plaintiff's** exclusive rights to the HQD product attached hereto as *Exhibit "E"*. The promotional materials were created at the time **Plaintiff** entered into the Agreement with Shenzhen.

7.      By the beginning of September, **Plaintiff** learned that several retailers, including **Defendant**, were selling illicit vape product, or in this case, HQD vape product not designated for sale in the United States. This product could only have been purchased from a source other than **Plaintiff** and contrary to **Defendant's** knowledge that it could only purchase HQD/CUVIE vape product for distribution in the United States from **Plaintiff** (and/or those who purchased the product originally from **Plaintiff**).

8.      The determination of what "is" and what "is not" illicit product is easily understood. In addition to that set forth in *Exhibit "B"*, **Plaintiff's** shipments come in boxes which are labeled as having been shipped directly from the manufacturer in China, have particular markings such a "tobacco", or "menthol", amongst other notable markings. See **Plaintiff's** boxes attached hereto as *Exhibit "F"*. The images are dated October 25, 2023.

9.       By way of example only, **Defendant's** shipments come in boxes distinctively different than those delivered to **Plaintiff**; i.e. delivery labels reference shipment from other locations such as Dubai. See *Exhibit "G"*.

10.     At or around the same time, **Defendant** posted and offered on its website that the HQD vape illicit product was available for purchase from **Defendant**. See a snapshot of **Defendant**'s website attached hereto as *Exhibit "H"*.

11.     To add insult to injury, on or about October 31, 2023, **Plaintiff**'s representative conducted an investigation at **Defendant**'s warehouse and witnessed the illicit HQD product on **Defendant**'s shelf. After discussion between **Plaintiff**'s principal and **Defendant**'s principal, **Defendant**'s principal opted to forward the remaining illicit product to **Plaintiff**. **Plaintiff** received the product on or about November 2, 2023 as set forth in *Exhibit "I"*.[1]

12.     Notwithstanding **Defendant**'s attempts to get back in **Plaintiff**'s "good graces" by delivering to **Plaintiff** the illicit product **Defendant** purchased, it remains apparent that **Defendant**'s plan is to continue to interfere with **Plaintiff**'s rights both in terms of the Federal trademark registrations it owns, **Plaintiff**'s State trademark registrations, and **Plaintiff**'s exclusive contractual right to distribute HQD CUVIE product in the United States (and this District). It further remains apparent that it intends to compete with **Plaintiff** to this end. Accordingly, **Plaintiff**

---

[1] **Defendant** attempted to disguise from whom and from the illicit product was being sent by placing another address in Port Charlotte on the label.

has been left with no choice, but to seek relief from the Court to protect its company's hard work, its brand, and its consumers.

## JURISDICTION AND VENUE

13.    **Plaintiff**, NEPA WHOLESALE, INC., is a duly registered Florida Corporation authorized to do business in both Broward and Palm Beach Counties, Florida, and is otherwise sui juris.

14.    **Defendant**, SAFA GOODS, LLC, is a duly registered limited liability company, authorized to do business in Broward County, Florida, and is otherwise sui juris.

15.    This is a civil action arising from **Defendant**'s misuse of **Plaintiff**'s trademarks and exclusive distribution rights. The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C.§1051 *et seq.,* and under Florida state law.

16.    This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§1121 and 28 §§1331 and 1338.

17.    This Court has supplemental jurisdiction over **Plaintiff**'s state law claims pursuant to 28 U.S.C. §1367(a).

18.    Venue is proper in Florida pursuant to 28 U.S.C. §1391(b).

19.    Venue is proper in the Southern District of Florida because a substantial part of the events or omissions giving rise to **Plaintiff's** claims occurred in this judicial district, thus, confusion about the origin of **Defendant**s' products is likely to occur in this district. Upon information and belief, **Defendant** sold the illicit HQD vape products to consumers in Miami, Florida.

20.    This Court has personal jurisdiction over **Defendant** as it is located in the State of Florida, and it sold, marketed, advertised and distributed infringing goods or otherwise transacted business from the State of Florida.

21.    More Specifically, **Defendant** conducts business activities in the State of Florida through its interactive e-commerce website located at <safagoods.com>, including the sale of "HQD CUVIE" product, which is accessible to consumers in this judicial district, as well as through its various social media pages.

## FACTUAL BACKGROUND

22.    On or about September 5, 2020, **Plaintiff** entered into an exclusive and evergreen distribution agreement with Shenzhen Hanquingda Technology Co., LTD., a manufacturer from China, for the exclusive sale and distribution of the "HQD CUVIE" vape products/electronic cigarettes throughout the United States. See copy of Exclusive Agency Sales Contract attached hereto as *Exhibit "A"*.

23.    As part and parcel of the exclusive nature of the Agreement, **Plaintiff** receives distinctive packaging of the product in order to distinguish it from the sale of HQD CUVIE vape products outside of the United States. See copy of **Plaintiff's** distinctive packaging of HQD CUVIE vape products set forth in *Exhibit "B"* hereto.

24.    The side-by-side comparison of the product packaging illustrates how **Defendant**'s packaging incorporates and imitates elements and the overall composition of **Plaintiff**'s distinctive HQD CUVIE Marks.[2]

---

[2] Moreover, the packaging shows the distinction between the product authorized for sale in the United States and that not authorized for sale in the United States.

25.     As a consequence of the foregoing, **Plaintiff** has invested significant resources in developing and printing its business access the United States under the HQD CUVIE Mark and branded name.

26.     It is next to impossible to enter into a store anywhere in Florida, if not the United States, where vapes are sold without seeing the HQD products not only being advertised on signage but sold therein.  Thus, **Plaintiff**'s great expense and effort have caused vape products bearing the "HQD" and "CUVIE" marks to become so ubiquitous within the State of Florida that the marks have become famous.

27.      On or about August 13, 2023, **Plaintiff** sought and obtained Florida Trademark Registration for HQD, Number T23000000675, said mark having been used legally, exclusively in connection with electronic cigarettes and oral vaporizers in many states, including but not limited to Florida.  See *Exhibit "H"*.

28.     As a consequence of the fame of the mark, as well as the Federal and State registrations thereon, the purchase of "HQD" electronic cigarettes and oral vaporizers in the State of Florida can only be effectuated through **Plaintiff's** company, or **Plaintiff's** companion company operating under the same management and control, NEPA 2 WHOLESALE LLC, owner of Florida Registration for HQD CUVIE PLUS, Number T23000000753.  See *Exhibit "I"* attached hereto.

29.     In connection with the Agreement, **Plaintiff** receives distinctive packaging of the product in order to distinguish it from the sale of HQD CUVIE vape products outside of the United States, said packaging bearing one of three of **Plaintiff's** trademarks "CUVIE" (USPTO Trademark Registration Number 7165966, "CUVIE AIR" (USPTO Registration Number 7025651), "CUVIE PLUS" (USPTO Registration Number 7025650), or "CUVIE PRO" (USPTO

Serial Number 97378110 (Allowed and pending). See copy of **Plaintiff's** distinctive packaging of HQD vape product and registration set forth in *Exhibits "J", "K", "L",* and *"M"* hereto.

30.     Additionally, **Plaintiff**'s interstate trademark property interest in HQD CUVIE PLUS is the subject of Trademark Registrations in the States of Colorado (Registration Number 20231905394), Georgia (Registration Number T-32037), Oklahoma (Registration Number 13444022), Oregon (Registration Number 52681), Rhode Island (Registration Number 20230900), Vermont (Registration Number M0009289), and West Virginia (Registration Number W2023091563873-607766), with others pending. See composite *Exhibit "N"* attached hereto.

31.     In addition to the foregoing, as the exclusive Distributor, the protections of Shenzhen's Registration Number 5778947 for the HQD mark, inured to the benefit of **Plaintiff.** See *Exhibit "O"* attached hereto.

32.     Notwithstanding the foregoing, upon information and belief, **Defendant** has sold the improperly obtained vape products/electronic cigarettes and intends to imminently sell same to other retailers and distributor customers.

33.     The products advertised, offered for sale and sold by **Defendant** infringes upon **Plaintiff**'s rights to not only the trademarks in questions, but its contractual rights to the product in question.

34.     **Defendant** engaged in these acts with the knowledge of **Plaintiff**'s rights and the willful intent to violate same.

35.     **Defendant**'s unlawful actions have, and will continue to cause, a substantial and adverse effect on United States commerce.

36.     **Defendant**'s wrongful acts and/or willful infringements have caused, and will continue to cause, irreparable harm to **Plaintiff** unless permanently enjoined, for which **Plaintiff** has no adequate remedy at law.

37.     **Defendant** has profited and will continue to profit in the future from its unlawful actions.

38.     **Defendant's** actions are causing and will continue to cause **Plaintiff** monetary damage in amounts presently unknown but to be determined at trial.

39.     All conditions precedent to maintaining this lawsuit have either been waived, excused, or performed.

## COUNT I:
## FEDERAL TRADEMARK INFRINGEMENT
## LANHAM ACT §32, 15 U.S.C. §1114

40.     **Plaintiff** realleges and reavers the allegations set forth in paragraphs one (1) through thirty-nine (39) as though fully set forth herein.

41.     **Plaintiff** has prior rights over **Defendant** in and to the Marks set forth herein in the United States by virtue of its use of the Marks in interstate commerce and registration of the Marks with the USPTO.

42.     **Plaintiff**'s Marks are valid, subsisting, used in commerce, and inherently distinctive.

43.     **Defendant**'s Competing Marks, being identical, is confusingly similar to **Plaintiff**'s registered Mark.

44.     **Defendant** has used the Marks on goods that are materially different than those authorized to be sold under said Marks in the United States.

45.     **Defendant**'s use of the Competing Marks is likely to cause confusion or mistake with **Plaintiff**'s registered Marks. Consumers likely will believe that **Defendant**'s goods and services are provided by, sponsored by, associated with, or otherwise affiliated with **Plaintiff** and HQD CUVIE because of **Defendant**'s use of the Competing Marks, which is confusingly similar to **Plaintiff**'s registered Mark.

46.     **Defendant** knows that its use of the Competing Marks would cause confusion or mistake as to **Plaintiff**'s sponsorship of, association with, or affiliation with the **Defendant**'s goods and services.

47.     **Defendant**'s use of the confusingly similar Competing Mark is likely to cause irreparable injury to **Plaintiff**'s registered Marks, reputation, and goodwill, the extent of this harm cannot be quantified, and therefore leaves **Plaintiff** with no adequate remedy at law.

48.     **Defendant**'s use of the Competing Marks constitutes infringement of the **Plaintiff**'s registered Marks in violation of Section 32 of the Lanham Act. 15 U.S.C. §1114.

49.     As a result of **Defendant's** infringement as set forth herein, **Plaintiff** has been damaged, in that the purchasing public is likely to become confused as to the source of the goods.

**WHEREFORE, Plaintiff** demands judgment against the **Defendant** as follows:

a.  A preliminary and permanent injunction enjoining and restraining the **Defendant**, its respective agents, servants, employees, officers, successors, licensees, and assigns, as well as all persons acting in concert or participation with each and any of them, from interfering in any manner in **Plaintiff's** Florida trademark, and otherwise engaging in unfair competition, to prevent further damage to the **Plaintiff** and propagation of consumer confusion. More

specifically, **Defendant** must be prohibited from utilizing the HQD and CUVIE

Marks in connection with its operations;

b.  An accounting for and payment of all profits that **Defendant** has derived from its

trademark infringement and unfair competition as set forth herein;

c.  All damages sustained by the **Plaintiff** as a result of **Defendant** having infringed

in its trademark and unfair competition as set forth herein;

d.  All costs of this action, including investigative fees;

e.  Reasonable attorney's fees;

f.  Any and all other relief deemed necessary and appropriate under the circumstances.


## COUNT II:
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## LANHAM ACT 43(a), 15 U.S.C. §1125(a)(1)(A)

50.    **Plaintiff** realleges and reavers the allegations set forth in paragraphs one (1)

through thirty-nine (39) as though fully set forth herein.

51.    The parties are direct competitors in the sale of vape product/electronic cigarettes.

52.    **Defendant**'s use of the Marks on packaging and advertising for, and/or to identify

the Marks, including use on packaging and in-store displays, constitutes a false designation of

origin that has caused, or is likely to cause, confusion, mistake, and deception as to the affiliation,

connections, or association between the Marks, all in violation of 15. U.S.C. §1125(a)(1)(A).

53.    Upon information and belief, **Defendant** has infringed on **Plaintiff**'s trademark

rights to the Marks in order to: compete against **Plaintiff**; trade on the reputation and goodwill of

the HQD CUVIE product by causing consumer confusion and mistake; and, to deceive the public

into believing that the HQD CUVIE products are associated with **Defendant**.

54.     Upon information and belief, **Defendant** has actual knowledge of **Plaintiff**'s ownership and prior use of the Marks and **Plaintiff**'s exclusive right to distribute the product and the Marks, and without **Plaintiff**'s consent, has willfully violated 15. U.S.C. §1125(a)(1)(A).

55.     Upon information and belief, **Defendant**'s use of the Marks in advertising injures **Plaintiff**'s commercial interest in its reputation and reduces **Plaintiff**'s sales of its products. See *Exhibit "P"*.

56.     The economic and reputational injury to **Plaintiff** of the infringement flow directly from the confusion and/or deception wrought by **Defendant**'s infringement of **Plaintiff**' and trademark rights.

57.     The economic and reputational injuries occur due to the similarity of the HQD CUVIE name.

58.     **Defendant**'s use of the HQD CUVIE brand name confuses and/or deceives consumers and that confusion and/or deception causes them to withhold trade from **Plaintiff** by purchasing **Defendant**'s products instead of **Plaintiff**'s competing products.

59.     **Defendant**'s use of the HQD CUVIE Brand name creates the false impression that **Defendant**'s products originate from the same source as **Plaintiff**'s directly competitive products.

60.     The false impression created by **Defendant**'s use of the HQD CUVIE brand name has and/or will, upon information and belief, lead consumers to purchase **Defendant**'s products on the erroneous belief that **Defendant**'s products are the same as, if not equivalent to, **Plaintiff**'s products.

61.     As a direct and proximate result of the foregoing acts by **Defendant**, **Plaintiff** has suffered, and continues to suffer, substantial damages not yet determinable, including irreparable injury for which there is no adequate remedy at law. Such irreparable injury will

continue unless and until **Defendant** is preliminarily and permanently enjoined by the Court from further violation of **Plaintiff**'s rights, for which **Plaintiff** has no adequate remedy at law.

62.    Pursuant to 15. U.S.C. §1116, **Defendant** should be preliminarily, and upon final hearing, permanently enjoined from using the Marks, or otherwise unfairly competing against **Plaintiff** or infringing upon **Plaintiff**'s trademark rights in the Mark Trade Dress.

63.    Pursuant to 15. U.S.C. §1117, **Plaintiff** has been damages.

**WHEREFORE, Plaintiff** demands judgment against the **Defendant** as follows:

    a.  A preliminary and permanent injunction enjoining and restraining the **Defendant**, its respective agents, servants, employees, officers, successors, licensees, and assigns, as well as all persons acting in concert or participation with each and any of them, from interfering in any manner in **Plaintiff's** Florida trademark, and otherwise engaging in unfair competition, to prevent further damage to the **Plaintiff** and propagation of consumer confusion. More specifically, **Defendant** must be prohibited from utilizing the HQD and CUVIE Marks in connection with its operations;

    b.  An accounting for and payment of all profits that **Defendant** has derived from its trademark infringement and unfair competition as set forth herein;

    c.  All damages sustained by the **Plaintiff** as a result of **Defendant** having infringed in its trademark and unfair competition as set forth herein;

    d.  All costs of this action, including investigative fees;

    e.  Reasonable attorney's fees;

    f.  Any and all other relief deemed necessary and appropriate under the circumstances.

## COUNT III:
## CLAIM FOR RELIEF
## CONTRIBUTORY TRADEMARK INFRINGEMENT
## LANHAM ACT §43, 15 U.S.C §1114(1)(A)

59.     **Plaintiff** realleges and reavers the allegations set forth in paragraphs one (1) through thirty-nine (39) as though fully set forth herein.

60.     **Defendant** has provided to retailer and/or distributor customers HQD CUVIE vape/electronic cigarettes bearing the Marks on goods that are materially different that those authorized to be sold under said Marks in the United States, with knowledge, expectation and/or intention that the retailers and/or distributors would use the Marks in connection with the sale of such products.

61.     **Defendant** has not been granted any right to use the Marks in the United States.

62.     The unauthorized use of the Marks by retailers and/or distributors supplied by **Defendant** has caused and/or is likely to case confusion or mistake, or to deceive regarding the source, sponsorship and/or affiliation of the goods imported, offered and sold by retailers and/or distributors supplied by **Defendant**.

63.     **Defendant** has intentionally induced or contributed to or knowingly participated in the infringement of **Plaintiff**'s rights in the Marks by **Defendant**'s retailer and distributor customers.

64.     **Defendant** has profited from the infringement of **Plaintiff**'s rights in the Marks by **Defendant**'s retailer and distributor customers.

65.     **Defendant**'s wrongful acts and/or willful contributor infringements, for which **Plaintiff** has no adequate remedy at law, has caused, and will continue to cause damages and irreparable harm to **Plaintiff** unless permanently enjoined.

66.   **Defendant** is liable for contributory trademark infringement, in violation of Section 43 of the Lanham Act, 15 U.S.C. §1114(1)(a).

**WHEREFORE, Plaintiff** demands judgment against the **Defendant** as follows:

a.   A preliminary and permanent injunction enjoining and restraining the **Defendant**, its respective agents, servants, employees, officers, successors, licensees, and assigns, as well as all persons acting in concert or participation with each and any of them, from interfering in any manner in **Plaintiff's** Florida trademark, and otherwise engaging in unfair competition, to prevent further damage to the **Plaintiff** and propagation of consumer confusion. More specifically, **Defendant** must be prohibited from utilizing the HQD and CUVIE Marks in connection with its operations;

b.   An accounting for and payment of all profits that **Defendant** has derived from its trademark infringement and unfair competition as set forth herein;

c.   All damages sustained by the **Plaintiff** as a result of **Defendant** having infringed in its trademark and unfair competition as set forth herein;

d.   All costs of this action, including investigative fees;

e.   Reasonable attorney's fees;

f.   Any and all other relief deemed necessary and appropriate under the circumstances.

## COUNT IV:
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA") AND THE COMMON LAW OF FLORIDA

67.   **Plaintiff** realleges and reavers the allegations set forth in paragraphs one (1) through thirty-nine (39) as though fully set forth herein.

68.     On or about September 5, 2020, **Plaintiff** entered into an exclusive distribution agreement with Shenzhen Hanquingda Technology Co., LTD., a manufacturer from China, for the exclusive sale and distribution of the "HQD CUVIE" vape products/electronic cigarettes throughout the United States. See copy of Exclusive Agency Sales Contract attached hereto as *Exhibit "A"*.

69.     As part and parcel of the exclusive nature of the Agreement, **Plaintiff** receives distinctive packaging of the product in order to distinguish it from the sale of HQD vape products outside of the United States. See copy of **Plaintiff's** distinctive packaging of HQD CUVIE vape products set forth in *Exhibit "B"* hereto.

70.     **Plaintiff**, at great expense and effort, has acquired a property interest in the sale of the HQD and CUVIE vape products in the United States.

71.     As a consequence of the foregoing, the purchase of "HQD CUVIE" vape product by companies in the United States can only be effectuated through **Plaintiff's** company.

72.     On or about May 22, 2022, **Plaintiff** and **Defendant** began discussing the purchase of **Plaintiff's** exclusively distributed "HQD" products. **Plaintiff** sent **Defendant** an invoice to this end as attached hereto as *Exhibit "D"*. Ultimately, the contemplated purchase did not occur.

73.     At that time, **Defendant** was duly and specifically advised of the exclusive nature of **Plaintiff's** distribution of the HQD vape products/electronic cigarettes. See **Plaintiff's** promotional materials announcing **Plaintiff's** exclusive rights to the HQD product attached hereto as *Exhibit "E"*. The promotional materials were created at the time **Plaintiff** entered into the Agreement with Shenzhen.

74.     By the beginning of September, **Plaintiff** learned that several retailers, including **Defendant**, were selling illicit vape product, or in this case, HQD vape product not designated for

sale in the United States. This product could only have been purchased from a source other than **Plaintiff** and contrary to **Defendant's** knowledge that it could only purchase HQD/CUVIE vape product for distribution in the United States from **Plaintiff** (and/or those who purchased the product originally from **Plaintiff**).

75.     By purchasing the HQD CUVIE vape product from a source or sources other than **Plaintiff**, whom **Defendant** knew to be the exclusive distributor of the HQD and CUVIE vape products therein, **Defendant** has deliberately, intentionally, and willful attempted to make an end-run around **Plaintiff's** rights as exclusive distributor of the HQD and CUVIE vape products/electronic cigarettes.

76.     Through its actions, **Defendant** is willfully and unfairly competing with **Plaintiff**.

77.     **Defendant's** actions constitute unfair competition under §501.201-203, Florida Statutes and the Florida common law which will greatly and irreparably damage **Plaintiff**. **Defendant** should be liable to **Plaintiff** for all profits obtained by **Defendant**, damages borne by **Plaintiff**, the costs of this action, including investigative fees, and reasonable attorney's fees pursuant to §501.2105 and §501.211, Florida Statutes.

78.     **Plaintiff** is moreover without an adequate remedy at law. As such, **Plaintiff** is entitled to, among other things, both a preliminary and permanent injunction enjoining and restraining the **Defendant**, its respective agents, servants, employees, officers, successors, licensees, and assigns, as well as all persons acting in concert or participation with each and any of them, from interfering in any manner in **Plaintiff's** exclusive Sales Agency Contract, and otherwise engaging in unfair competition, to prevent further injury to the **Plaintiff** and from purchasing HQD and CUVIE vape products/electronic cigarettes from any other source other than **Plaintiff**.

79.     **Plaintiff** has retained the undersigned attorney and has agreed to pay a reasonable fee for his services.

**WHEREFORE, Plaintiff** demands judgment against the **Defendant** as follows:

a.  A preliminary and permanent injunction enjoining and restraining the **Defendant**, its respective agents, servants, employees, officers, successors, licensees, and assigns, as well as all persons acting in concert or participation with each and any of them, from interfering in any manner in **Plaintiff's** Exclusive Distribution Agreement trademark, and otherwise engaging in unfair competition, to prevent further damage to the **Plaintiff** from purchasing HQD and/or CUVIE vape products from any other source other than **Plaintiff**;

b.  An accounting for and payment of all profits that **Defendant** have derived from its unfair competition as set forth herein;

c.  All damages sustained by the **Plaintiff** as a result of **Defendant** having infringed in its unfair competition as set forth herein;

d.  All costs of this action, including investigative fees;

e.  Reasonable attorney's fees;

f.  Any and all other relief deemed necessary and appropriate under the circumstances.

### COUNT V:
### TORTIOUS INTERFERENCE WITH CONTRACTUAL BUSINESS RELATIONSHIP

80.     **Plaintiff** realleges and reavers the allegations set forth in paragraphs one (1) through thirty-nine (39) as though fully set forth herein.

81.     On or about September 5, 2020, **Plaintiff** entered into an exclusive distribution agreement with Shenzhen Hanquingda Technology Co., LTD., a manufacturer from China, for the

exclusive sale and distribution of the "HQD CUVIE" vape products/electronic cigarettes throughout the United States. See copy of Exclusive Agency Sales Contract attached hereto as *Exhibit "A"*.

82.     As part and parcel of the exclusive nature of the Agreement, **Plaintiff** receives distinctive packaging of the product in order to distinguish it from the sale of HQD CUVIE vape products outside of the United States. See copy of **Plaintiff's** distinctive packaging of HQD vape products set forth in *Exhibit "B"* hereto.

83.     As a consequence of the foregoing, the purchase of "HQD" vape product by companies in the United States can only be effectuated through **Plaintiff's** company.

84.     On or about May 22, 2022, **Plaintiff** and **Defendant** began discussing the purchase of **Plaintiff's** exclusively distributed "HQD" products. **Plaintiff** sent **Defendant** an invoice to this end as attached hereto as *Exhibit "D"*. Ultimately, the contemplated purchase did not occur.

85.     At that time, **Defendant** was duly and specifically advised of the exclusive nature of **Plaintiff's** distribution of the HQD vape products/electronic cigarettes. See **Plaintiff's** promotional materials announcing **Plaintiff's** exclusive rights to the HQD product attached hereto as *Exhibit "E"*. The promotional materials were created at the time **Plaintiff** entered into the Agreement with Shenzhen.

86.     By the beginning of September, **Plaintiff** learned that several retailers, including **Defendant**, were selling illicit vape product, or in this case, HQD vape product not designated for sale in the United States. This product could only have been purchased from a source other than **Plaintiff** and contrary to **Defendant's** knowledge that it could only purchase HQD/CUVIE vape product for distribution in the United States from **Plaintiff** (and/or those who purchased the product originally from **Plaintiff**).

87.     **Defendant** had absolute knowledge of the contractual relationship between **Plaintiff** and Shenzhen, the manufacturer, resulting in **Plaintiff's** exclusive right to distribute the HQD CUVIE vape products/electronic cigarettes in the United States.

88.     **Defendant** knowingly and intentionally interfered with and frustrated the contractual relationship between **Plaintiff** and Shenzhen, the manufacturer, by inexplicably and unjustifiably purchasing the tainted HQD CUVIE vape products from a source or sources other than **Plaintiff**.

89.     As a result of **Defendant's** frustration of purpose and unjustified interference as set forth herein, **Plaintiff** has been damaged.

90.     **Plaintiff** reserves the right to seek punitive damages upon the proper presentation of same.

**WHEREFORE, Plaintiff** demands judgment against the **Defendant** as follows:

   a.  Damages;

   b.  Reasonable costs of this action;

   c.  Any and all other relief deemed necessary and appropriate under the circumstances.

## COUNT VI:
## TRADEMARK INFRINGEMENT OF A TRADEMARK FAMOUS AND REGISTERED IN FLORIDA

91.     **Plaintiff** realleges and reavers the allegations set forth in paragraphs one (1) through thirty-nine (39) as though fully set forth herein.

92.     On or about September 5, 2020, **Plaintiff** entered into an exclusive distribution agreement with Shenzhen Hanquingda Technology Co., LTD., a manufacturer from China, for the exclusive sale and distribution of the "HQD CUVIE" vape products/electronic cigarettes

throughout the United States. See copy of Exclusive Agency Sales Contract attached hereto as *Exhibit "A".*

93.     As part and parcel of the exclusive nature of the Agreement, **Plaintiff** receives distinctive packaging of the product in order to distinguish it from the sale of HQD CUVIE vape products outside of the United States. See copy of **Plaintiff's** distinctive packaging of HQD CUVIE vape products set forth in *Exhibit "B"* hereto.

94.     **Plaintiff** also had an exclusive distribution contract for the remaining HQD products.  **Plaintiff**, having expended great expense and effort developing the HQD brand within Florida, developed an ownership interest therein.

95.     It is next to impossible to enter into a store anywhere in Florida where vapes are sold without seeing the HQD products not only being advertised on signage, but sold therein. Thus, **Plaintiff**'s great expense and effort have caused vape products bearing the "HQD" and "CUVIE" marks to become so ubiquitous within the State of Florida that the marks have become famous.

96.      On or about August 13, 2023, **Plaintiff** sought and obtained Florida Trademark Registration for HQD, Number T23000000675, said mark having been used legally, exclusively in connection with electronic cigarettes and oral vaporizers in many states, including but not limited to Florida.  See *Exhibit "H".*

97.     As a consequence of the fame of the mark, as well as the Federal and State registrations thereon, the purchase of "HQD" electronic cigarettes and oral vaporizers in the State of Florida can only be effectuated through **Plaintiff's** company, or **Plaintiff**s companion company operate under the same management and control, NEPA 2 WHOLESALE LLC, owner of Florida Registration for HQD CUVIE PLUS, Number T23000000753.   See *Exhibit "I"* attached hereto.

98.     On or about May 22, 2022, **Plaintiff** and **Defendant** began discussing the purchase of **Plaintiff's** exclusively distributed "HQD" products. **Plaintiff** sent **Defendant** an invoice to this end as attached hereto as *Exhibit "D"*. Ultimately, the contemplated purchase did not occur.

99.     At that time, **Defendant** was duly and specifically advised of the exclusive nature of **Plaintiff's** distribution of the HQD vape products/electronic cigarettes. See **Plaintiff's** promotional materials announcing **Plaintiff's** exclusive rights to the HQD product attached hereto as *Exhibit "E"*. The promotional materials were created at the time **Plaintiff** entered into the Agreement with Shenzhen.

100.    Sales by **Defendant** of the illicit products bearing the "HQD" or "CUVIE" trademarks that were not sourced from **Plaintiff** are in violation of §495.151, Florida Statutes and have caused dilution of the mark.

101.    **Plaintiff's** distinctive "HQD" Brand Marks, "HQD" Brand Trade Dress, "HQD" Brand Product Slogan, and the "HQD" name as detailed above, create proprietary interests.

102.    **Plaintiff's** distinctive "CUVIE" Brand Marks, "CUVIE" Brand Trade Dress, "CUVIE" Brand Product Slogan, and the "CUVIE" name as detailed above, create proprietary interests.

103.    **Defendant** has deliberately and willfully attempted to trade on **Plaintiff's** longstanding and hard-earned goodwill in its "HQD" and "CUVIE" Brand Marks, "HQD" and "CUVIE" Brand Trade Dress, "HQD" and "CUVIE" Brand Product Slogan, and the "HQD" and "CUVIE" trade names, and the reputation **Plaintiff** has established in connection with its vape products and other smoking accessories.

104.    **Defendant** has also deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of products they are selling, by utilizing **Plaintiff**s "HQD" and

"CUVIE" Brand Marks, "HQD" and "CUVIE" Brand Trade Dress, "HQD" and "CUVIE" Brand Product Slogan, and the "HQD" and "CUVIE" names, to pass said products off as if sourced from **Plaintiff**.

105.    **Defendant's** conduct is likely to have caused appreciable confusion, mistake, or deception as to the affiliation, connection or association of **Defendant's** "HQD" Products with the "HQD" Brand Products produced and sold by **Plaintiff**, and as to the origin, sponsorship, or approval of **Defendant's** "HQD" and "CUVIE" Products with "HQD" and "CUVIE" Brand Products produced and sold by **Plaintiff**, all in violation of Florida common law.

106.    **Defendant's** unauthorized and tortious conduct has also deprived and will continue to deprive **Plaintiff** of the ability to control the consumer perception of its products offered under the "HQD" and "CUVIE" Brand Marks, "HQD" and "CUVIE" Brand Trade Dress, "HQD" and "CUVIE" Brand Product Slogan, and the "HQD" and "CUVIE" name, placing valuable reputation and goodwill of **Plaintiff** in the hands of **Defendant** without permission or approval of **Plaintiff**.

107.    By its actions, **Defendant** has infringed against **Plaintiff's** "HQD" and "CUVIE" Brand Marks, "HQD" and "CUVIE" Brand Trade Dress, "HQD" and "CUVIE" Brand Product Slogan, and the "HQD" and "CUVIE" trade names, deliberately and with the intention of wrongfully trading on the goodwill and reputation symbolized by **Plaintiff's** "HQD" and "CUVIE" Brand Marks, "HQD" and "CUVIE" Brand Trade Dress, "HQD" and "CUVIE" Brand Product Slogan, and the "HQD" and "CUVIE" names.

108.    Upon information and belief, **Defendant's** use of the "HQD" and "CUVIE" Name, the "HQD" and "CUVIE" Products, sold in the "HQD" and "CUVIE" packaging and box graphic designs, injures **Plaintiff's** commercial interest in its reputation and reduces **Plaintiff's** sales of its products.

109.    As a result of **Defendant's** conduct, **Plaintiff** has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by **Plaintiff** in its "HQD" Brand Marks, specifically the "HQD" Brank Trade Dress, "HQD" Brand Product slogan, and the "HQD" name.

110.    The economic and reputation injury occur due to the similarity of the "HQD" and "CUVIE" Name, the "HQD" and "CUVIE" products, sold in the "HQD" and "CUVIE" packaging and box graphic designs, to the "HQD" and "CUVIE" Brand Trade Dress, and "HQD" and "CUVIE" Brand product slogan.

111.    **Defendant's** use of the "HQD" and "CUVIE" Names, the "HQD" and "CUVIE" Products, sold in the "HQD" and "CUVIE" packaging and box graphic designs, creates the false impression that **Defendant's** products originate from the same source as **Plaintiff's** competitive products.

112.    Thus, **Plaintiff** is entitled to recover an amount equivalent to the profits that **Defendant** has derived and may continue to derive as a result of their unlawful misappropriation and infringement of **Plaintiff's** "HQD" and "CUVIE" Brand marks, specifically the "HQD" and "CUVIE" brand trade dress, "HQD" and "CUVIE" brand product slogan, and the "HQD" and "CUVIE" names.

**WHEREFORE, Plaintiff** demands judgment against the **Defendant** as follows:

a.  A preliminary and permanent injunction enjoining and restraining the **Defendant**, its respective agents, servants, employees, officers, successors, licensees, and assigns, as well as all persons acting in concert or participation with each and any of them, from interfering in any manner in **Plaintiff's** Exclusive Distribution Agreement trademark, and otherwise

engaging in unfair competition, to prevent further damage to the **Plaintiff** from purchasing HQD vape products from any other source other than **Plaintiff**;

b.  A permanent injunction requiring delivery of all unauthorized product under **Defendant's** possession and control to an officer of this court or the **Plaintiff** for destruction;

c.  An accounting for and payment of all profits that **Defendant** has derived from its unlawful intentional infringement as set forth herein;

d.  Treble damages to remedy damages sustained by the **Plaintiff** as a result of **Defendant** having infringed upon its famous marks;

e.  All costs of this action, including investigative fees;

f.  Reasonable attorney's fees;

g.  Any and all other relief deemed necessary and appropriate under the circumstances.

## COUNT VII:
## TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION PURSUANT TO § 495.151, FLORIDA STATUTES

113.  **Plaintiff** realleges and reaffirms the allegations in paragraphs one (1) through thirty-nine (39) as though fully set forth herein.

114.  **Plaintiff** is the owner of the valid, protectable trademark and/or service mark of HQD CUVIE. See *Exhibit "A."*

115.  **Plaintiff**, at great expense and effort, has acquired a property interest in the State of Florida in the Mark in connection with its goods.

116.     The Mark is distinctive and famous within the meaning of §495.151, Florida Statutes and were famous, legally and otherwise, prior to the acts committed by **Defendant** discussed therein.

117.     **Defendant** has not been granted any right to the use of the Mark in the state of Florida.

118.     **Defendant's** use of the Competing Marks injures **Plaintiff**'s business reputation and has diluted and will continue to dilute the distinctive qualities of the Marks.

119.     **Defendant's** wrongful acts and/or willful dilution has caused and will continue to cause damages to **Plaintiff**, especially with respect to its reputation with its customers in Florida and beyond the state.

120.     **Defendant's** conduct has damaged **Plaintiff** and will, unless enjoined by the Court, further dilute and impair the value of **Plaintiff**'s Marks, reputation, and goodwill. This harm constitutes an injury for which **Plaintiff** has no adequate remedy at law.

121.     By reason of the foregoing, **Plaintiff** is entitled to permanent injunctive relief against **Defendant**, restraining them and all those in active concert and participation with **Defendant** from any further acts of dilution, among other remedies as outlined below. More specifically, **Defendant** must be prohibited from utilizing the Marks for any reason whatsoever.

**WHEREFORE, Plaintiff** demands judgment against the **Defendant** as follows:

a. A preliminary and permanent injunction enjoining and restraining the **Defendant**, its respective agents, servants, employees, officers, successors, licensees, and assigns, as well as all persons acting in concert or participation with each and any of them, from interfering in any manner in **Plaintiff's** Exclusive Distribution Agreement trademark, and otherwise

engaging in unfair competition, to prevent further damage to the **Plaintiff** from purchasing HQD vape products from any other source other than **Plaintiff**;

b.   A permanent injunction requiring delivery of all unauthorized product under **Defendant's** possession and control to an officer of this court or the **Plaintiff** for destruction;

c.   An accounting for and payment of all profits that **Defendant** has derived from its unlawful intentional infringement as set forth herein;

d.   Treble damages to remedy damages sustained by the **Plaintiff** as a result of **Defendant** having infringed upon its famous marks;

e.   All costs of this action, including investigative fees;

f.   Reasonable attorney's fees;

g.   Any and all other relief deemed necessary and appropriate under the circumstances.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 28, **Plaintiff** hereby demands a trial by jury on all issues for which a trial by jury may be had.

Dated: November 6, 2023.

Respectfully submitted,
**FEINSTEIN & MENDEZ, P.A**
*/s/ Brett Feinstein*
Brett Feinstein, Esq.
Florida Bar No.: 953120
2600 S. Douglas Road, Suite 506
Coral Gables, Florida 33134
Telephone: (786) 636-8938
Facsimile: (786) 636-8941
E-mail: brett@fmpalawfirm.com

# EXHIBIT "A"

| 区域独家代理销售合同 | Exclusive Agency Sales Contract |
|---|---|
| 甲方（生产商）：深圳市汉清达科技有限公司<br>乙方（代理商）：NEPA WHOLESALE INC<br>鉴于：<br>1. 甲方系一家依据中华人民共和国（以下简称"中国"）法律合法有效成立的有限责任公司,其注册地址位于深圳市光明区玉塘街道玉律工业区 A4 号厂房 2 楼,法定代表人为侯守山,目前仍存续并正常经营；<br><br>2. 乙方系一家依据美利坚合众国（以下简称"美国"）法律合法有效成立的有限责任公司,其注册地址为 4365 Okeechobee blvd suit b9,West palm beach,Florida 33409.,法定代表人为 Bijay Shrestha。<br><br>3. 甲方系 HQD 品牌项下型号为 HQD Cuvie、Cuvie Plus、Maxim、Rosy 系列（以下简称"目标系列"）电子烟的生产商,拥有相应的知识产权、产品设计、生产技术等资源优势,希望通过独家授权销售的方式,由乙方在美国全境独家销售其目标系列电子烟；<br><br>4. 乙方系在美国拥有雄厚的营销、推广、销售等渠道的代理商,希望通过独家授权销售的方式在美国全境销售目标系列电子烟。<br><br>5. 乙方拟自己出资,向美国（简称"FDA"）申请（简称"PMTA"）许可,以期目标系列电子烟顺利地在美国销售。<br><br>双方本着平等、自愿、互惠互利、诚实信用原则,经充分友好协商,就乙方在美国全境独家代理销售甲方生产的目标系列电子烟的相关事宜,于 2020 年 9 月 5 日在中国深圳订立以下合同条款,以兹共同遵守。 | Party A (manufacturer): Shenzhen Hanqingda Technology Co., Ltd.<br>Party B (agent): NEPA WHOLESALE INC<br>Given:<br>1. Party A, a limited liability company legally and validly established in accordance with the laws of the People's Republic of China (hereinafter referred to as "China"), located in the 2nd floor, Block A4, Yulv Industrial Zone, Yutang Street, Guangming District, Shenzhen, represented by Hou Shoushan. Currently it still exists and operates normally;<br>2. Party B, a limited liability company legally and validly established in accordance with the laws of the United States of America (hereinafter referred to as the "United States"), located in 4365 Okeechobee Blvd Suite B9, West palm beach, FL 33409, represented by Bijay Shrestha.<br>3. Party A is a manufacturer of electronic cigarettes with models of HQD Cuvie, Cuvie Plus, Maxim, and Rosy series (hereinafter referred to as "agent products") under the HQD brand, and has the corresponding intellectual property rights, product design, production technology and other resource advantages, It is hoped that Party B will exclusively sell its agent products throughout the United States through exclusive authorized sales;<br>4. Party B, an agent with strong marketing, promotion, sales and other channels in the United States of America, hopes to sell Party A's electronic cigarettes of agent products in the United States of America through exclusive regional authorization.<br>5. Party B intends to fund itself and apply to the United States ("FDA") for a license ("PMTA"), in order to successfully sell the agent products in the United States.<br><br>In accordance with the principles of equality, voluntariness, mutual benefit and good faith, through fully and friendly negotiation, both parties entered into the following contract terms in Shenzhen, China on September 5, 2020 regarding the exclusive sale of agent products produced by Party A in the whole territory of the United States of America as follows: |
| **1. 代理产品**<br>1.1 乙方代理销售的产品为甲方所拥有的 HQD 品牌项下目标系列电子烟,即型号为 HQD Cuvie、Cuvie Plus、Maxim、Rosy 的电子烟的一切权利,且已根据美国相应的法律法规的规定获得了相关同意、许可、注册和证明的产品,即目标系列电子产品及相应配件/配套包装等。 | **1. Agent product**<br>1.1 The product sold by Party B as an agent are the agent products under the HQD brand owned by Party A, namely, all rights related to the HQD cuvie,cuvie plus,maxim,rosy electronic cigarette (Party A's internal code: H009,H040,H019,H032), and have been agreed, licensed, registered and certified in accordance with the corresponding laws and regulations of the United States of America, |



| | | |
|---|---|---|
| **1.2** | 目标系列产品包括甲方目前拥有的所有口味及未来根据乙方要求增加的口味或甲方自行研发的其他新口味，特别是乙方申请了 PMTA 的口味。 | namely, corresponding accessories / packaging etc. of HQD cuvie, cuvie plus, maxim, rosy products.<br><br>1.2 Agent products include all flavors that Party A currently has, flavors that will be added in the future according to Party B's requirements and other new flavors developed by Party A, especially the flavors that Party B has applied for PMTA. |
| **1.3** | 代理区域<br>美利坚合众国全境。 | 1.3. Agent area<br>United States of America. |
| **2.** | 代理权限 | **2. Proxy authority** |
| **2.1** | 甲方授权乙方为美国全境的独家代理商，全面负责该地区目标系列电子烟的销售和经销商管理。未申请 PMTA 不影响本合同目标系列电子烟在美国正常销售的，仍由乙方独家代理目标系列电子烟在美国的销售。 | 2.1 Party A authorizes Party B to be the exclusive agent throughout the United States, and is fully responsible for the sales and dealer management of the agent products of electronic cigarettes in the region. Failure to apply for PMTA will not affect the normal sales of the agent products of electronic cigarettes in this contract in the United States, and Party B will still be the sole agent for the sales of the agent products of electronic cigarettes in the United States. |
| **2.2** | 乙方有权为了销售产品之需要，在代理区域内设置其他代理商、经销商。 | 2.2 Party B has the right to set up other agents and distributors in the agency area for the needs of selling products. |
| **2.3** | 在代理区域内，乙方有权根据实际情况自行确定产品销售价格，并制定相应的销售政策。 | 2.3 In the agency area, Party B has the right to determine the sales price of the product according to the actual situation and formulate corresponding sales policies. |
| **2.4** | 乙方有权为销售产品之目的，在销售过程中提及并描述产品的功能、规格、工艺、特性及乙方为该产品美国全境独家销售代理等信息，并制作相应的营销宣传推广资料。 | 2.4 For the purpose of selling products, Party B has the right to mention and describe the functions, specifications, craftsmanship, characteristics of the products and information that Party B is the exclusive sales agent of the products in the United States during the sales process, and make corresponding marketing and promotion materials. |
| **3.** | 代理销售方式<br>乙方在美国全境享有全渠道的独家销售权，包括线上网络平台和线下销售网络等。 | 3. Agent sales method<br>Party B enjoys the exclusive sales rights of all channels throughout the United States, including online network platforms and offline sales networks. |
| **4.** | 代理期限 | 4. Agency period |
| **4.1** | 本合同乙方的代理权限长期持续有效，甲方不得撤销或以行为实际撤销，否则应赔偿乙方损失包括乙方支付的申请 PMTA 的费用，但乙方有以下两种情况的除外； | 4.1 The agency authority of Party B in this contract is valid for long term. Party A shall not revoke it or actually revoke it by behavior. Otherwise, it shall compensate Party B for its losses, including the fees paid by Party B for applying for PMTA, except that Party B has the following two situations: |
| **4.1.1** | 乙方明确表示不再代理甲方目标系列产品或乙方以实际行为表示不再代理甲方目标系列电子烟中某一款产品的，如多次发生有美国客户以合理价格向乙方采购，乙方拒绝发货而无合理理由的情形的；如乙方没有合理理由连续超过 30 天不向甲方订货的。 | 4.1.1 Party B expressly states that it will no longer represent Party A's HQD Cuvie, Cuvie Plus, Maxim, Rosy products or that Party B will no longer represent a certain product in Party A'HQD Cuvie, Cuvie Plus, Maxim, Rosy products by actual behavior, such as repeated purchases by American customers from Party B at reasonable prices, and Party B refuses to deliver the goods without reasonable reasons.; Party B does not order from Party A for more than 30 consecutive |

| | |
|---|---|
| 4.1.2 乙方向 FDA 提交 PMTA 申请后，经甲方要求仍不继续按 FDA 的要求配合后续 PMTA 申请步骤，甲方自行进行后续 PMTA 申请的。 | days without reasonable reasons.<br>4.1.2 After Party A's request, Party B still does not proceed with the follow-up PMTA application steps in accordance with FDA's requirements, then Party A has the right to carry out the follow-up PMTA application by itself. |
| 4.1.3 目标系列电子烟中某一款代理产品因上述情况被甲方撤销授权的，不影响其他代理产品的美国独代授权的效力。 | 4.1.3 If one of the agency products is revoked by Party A due to the above-mentioned circumstances, the validity of the U.S. sole agency authorization of other agency products will not be affected. |
| 4.2 甲方承诺，若本合同被撤销的，在同等条件下，优先选择乙方作为独家授权代理商。 | 4.2 Party A undertakes that if this contract is canceled, under the same conditions, Party B will be given priority to be the exclusive authorized agent. |
| 5. 合同保证金 | 5. Contract guarantee deposit |
| 5.1 因乙方出资申请 PMTA 将耗费巨额资金，甲方同意乙方无须为本合同支付合同保证金。 | 5.1 Since Party B's application for PMTA will cost a huge amount of money, Party A agrees that Party B does not need to pay the contract deposit for this contract. |
| 5.2 甲方同意，乙方基于双方于 2020 年 6 月 29 日签订《区域独家代理销售合同》而向甲方支付的 100 万元人民币保证金转为乙方的货款，在乙方后续订单里据实抵扣。 | 5.2 Party A agrees that the RMB 1 million deposit paid by Party B to Party A based on the signing of the "Regional Exclusive Agency Sales Contract" by both parties on June 29, 2020 will be transferred to Party B's payment for goods, which will be deducted in Party B's subsequent orders. |
| 6. 产品价格 | 6. Product price |
| 6.1 双方确认，代理产品以人民币计价，乙方按以下单价（不含税）向甲方支付对价：<br>Cuvie 每支为 12.125 元；<br>Cuvie Plus 每支为 20 元；<br>Maxim 每支为 12 元；<br>Rosy 每支为 12.8 元。 | 6.1 Both parties confirm that the agent products are denominated in RMB, and Party B shall pay the consideration to Party A at the following unit price (excluding tax):<br>Cuvie is 12.125 rmb/pc;<br>Cuvie Plus is 20 rmb/pc;<br>maxim is 12rmb/pc;<br>Rosy is 12.8rmb/pc. |
| 6.2 甲方明确，该单价为乙方应支付给甲方的全部价款，并非乙方代理销售产品的最终定价。 | 6.2 Party A makes it clear that the unit price is the full price that Party B should pay to Party A, not the final price for the products sold by Party B as an agent. |
| 7. 订单 | 7. Order |
| 7.1 在代理期限内，乙方为销售产品不时向甲方发出的订单应包括产品的名称、数量、产品交付日期和地点等信息。产品交付日期由双方根据单个订单具体情况协商确定，但自乙方下订单之日起首批交货最长不得超过 45 天，但因停电、安检等政策、国家重大法定假日等原因耽误的应该顺延。该等订单通过电子邮件的方式按本合同约定送达甲方。 | 7.1 During the agency period, the orders Party B sends to Party A from time to time for the sale of products shall include information such as the name, quantity, delivery date and location. The delivery date of the product shall be determined by the two parties through negotiation according to the specific situation of a single order, but the first batch of delivery shall not exceed 45 days from the date of placing the order by Party B. However, the delay due to power failure, security check policies, major national holidays and epidemic situation shall be postponed. Such orders shall be delivered to Party A by email as agreed herein |
| 甲方指定以下邮箱为接收订单的专用邮箱： | Party A designates the following mailbox as the special mailbox for |

| | |
|---|---|
| sofia@hqdtech.com<br>乙方指定以下邮箱为发送订单的专用邮箱：<br>nepawholesale@hotmail.com | receiving orders: sofia@hqdtech.com<br>Party B designates the following mailbox as the special mailbox for sending orders: nepawholesale@hotmail.com |
| **7.2** 乙方向甲方发出订单后，应按该订单总价款的 10%向甲方支付定金，甲方收到定金后应立即安排生产。 | 7.2 after placing an order to Party A, Party B shall pay a deposit to Party A at 10% of the total amount value of the order, and Party A shall arrange production of prepared materials after receiving the deposit. |
| **7.3** 若甲方按本条第 2 款订单完成生产并通知乙方提货的，乙方未于 10 个工作日内提货的，应向甲方补充该批次订单货款总额的 20%作为进度款。 | 7.3 If Party A completes the production according to the order in item 2 of this article and informs Party B to pick up the goods, if Party B fails to pick up the goods within 10 working days, it shall supplement 20% of the total payment for the batch of orders to Party A as the progress payment. |
| **8. 配货** | 8. Allocation of Goods |
| **8.1** 甲方应根据乙方订单要求及时将产品（包括产品本身及相应配件、质保书、产品说明等）配齐，由乙方指定的货代自甲方厂区提货。 | 8.1 Party A shall promptly complete the product (including the product itself and corresponding accessories, warranty, product description, etc.) according to the requirements of Party B's order, and the freight forwarder designated by Party B shall pick up the goods from Party A's factory. |
| **8.2** 甲方应当按照产品本身的情况，以及乙方的要求对产品进行适当的包装，以满足运输、销售需要。 | 8.2 Party A shall properly pack the product according to the conditions of the product itself and the requirements of Party B to meet the needs of transportation and sales. |
| **8.3** 乙方应在甲方发货前对产品的包装、外观进行检验，若有瑕疵的，由甲方予以换货。 | 8.3 Party B shall inspect the packaging and appearance of the product before delivery by Party A. Any defects happen, Party A shall replace the product. |
| **9. 结算**<br>乙方应在甲方每次发货前将该批次产品剩余 90%的货款结算，否则甲方可拒绝发货。 | 9. Settlement<br>Party B shall clear the remaining 90% of the payment for the batch of products before each delivery by Party A, otherwise Party A may refuse to deliver the goods. |
| **10. 产品指导**<br>代理期限内，甲方应对乙方开展代理销售所必要的产品技术上的指导、产品销售推广所需信息，并向乙方提供必要的协助。 | 10. Product Guidance<br>During the agency period, Party A shall provide Party B with necessary technical guidance for products and information required for product sales promotion, and provide necessary assistance to Party B. |
| **11. 售后服务**<br>乙方销售产品后，甲方应按法律法规的规定，以及产品质保书的承诺，及时全面地提供产品售后服务及质保服务。 | 11. After-sales service<br>After Party B sells products, Party A shall provide timely and comprehensively after-sales service and quality assurance services in accordance with the provisions of laws and regulations and the commitments in the product warranty. |
| **12. 知识产权**<br>**12.1** 为代理销售之目的，甲方许可乙方使用甲方拥有的商号及其标识、商标、专利、著作权等，乙方在代理区域内享有独占许可的权利。 | 12. Intellectual Property Rights<br>12.1 For the purpose of agency sales, Party A allows Party B to use the trade names and logo, trademarks, patents, copyrights, etc. owned by Party A, and Party B has the exclusive right to license in the agency area. |
| **12.2** 乙方在产品销售过程中根据其自身智力活动所形成的智 | 12.2 Party B owns the intellectual property rights formed by Party B |

力成果，包括但不限于产品宣传语、图片、视频、产品介绍、销售方式等的知识产权，由乙方所有。未经乙方书面许可，甲方不得使用。

**13. 商业秘密**

13.1 双方同意，无论是在本合同期限内还是在本合同终止后，仅将通过合同履行所获得的对方的商业秘密用于与履行本合同有关的方面，绝不使用于其他目的，并且不得直接或间接地将任何一项保密资料或信息透露或者提供给其他雇员和代理人之外的第三方，其雇员和代理人中亦限于需要知道该保密资料或信息以履行本合同者。若任何一方的任何雇员或代理人未经授权而使用或透露任何保密资料，应当对此承担全部的责任。

**14. 声明与保证**

**14.1 甲方的声明与保证**

14.1.1 甲方签署和履行本合同所需的一切手续均已办妥并合法有效。

14.1.2 甲方提供的材料包括但不限于代理产品的美国商标注册证、产品检测报告、CE 报告、Rohs 报告等证明文件真实且有效。

14.1.3 甲方有权生产、制作产品，拥有产品本身所包含的商标、专利、著作等在内的一切知识产权，产品的销售不会侵害任何第三人的权益。

14.1.4 甲方不在代理区域内以自己名义销售代理产品，或授权任何第三方作为代理产品的代理商或经销商。若本合同生效前甲方在代理区域内已有相应的代理商或经销商，本合同生效后甲方应立即终止与所有第三方的合作。

14.1.5 甲方不在代理区域内以自己名义销售，或授权任何第三方作为代理商或经销商销售任何印有与 Cuvie、cuvie plus、Maxim、Rosy 字样相同或相似产品型号标识的产品。

14.1.6 甲方不在代理区域内以自己名义销售，或授权任何第三方作为代理商或经销商销售任何印有因乙方要求增加的新口味名称相同或相似标识的产品。

14.1.7 甲方承诺其生产、制造的产品，符合国家的强制性标

---

based on its own intellectual activities during the product sales process, including but not limited to product slogans, pictures, videos, product introductions, sales methods, etc. Party A shall not use it without the written permission of Party B.

**13. Business Confidentiality**

13.1 Both parties agree that, whether during the term of this contract or after the termination of this contract, the other party's Business Confidentiality obtained through the performance of the contract shall only be used in connection with the performance of this contract, and never for other purposes, and shall not be used directly or indirectly disclose or provide any confidential information or to a third party other than other employees and agents, whose employees and agents are also limited to those who need to know the confidential information or information to perform this contract. Any unauthorized use or disclosure of any Confidential Information by any employee or agent of either party shall be solely responsible.

**14. Declarations and Warranties**

**14.1 Party A's Declarations and warranties**

14.1.1 All formalities required by Party A to sign and performance of this contract have been completed and are legal and valid.

14.1.2 The materials provided by Party A, including but not limited to the United States of America trademark registration certificate, product test report, CE report, Rohs report and other certification documents of the agent products, are true and valid.

14.1.3 Party A has the right to produce and manufacture products, and has all intellectual property rights including trademarks, patents, works, etc. contained in the product itself, and the sale of the product will not infringe the rights and interests of any third party.

14.1.4 Party A shall not sell agent products in its own name within the agency area, or authorize any third party to act as an agent or distributor of agent products. If Party A has corresponding agents or distributors in the agency area before this contract takes effect, Party A shall immediately terminate the cooperation with all third parties after this contract takes effect.

14.1.5Party A shall not sell in its own name within the agency area, or authorize any third party to act as an agent or distributor to sell any product with the same or similar logo or mark of Cuvie, cuvie plus, Maxim or Rosy.

14.1.6 Party A shall not sell in its own name within the agency area, or authorize any third party to act as an agent or distributor to sell any products with the same or similar flavors marks required by Party B.

14.1.7 Party A promises that the products conform to the national mandatory standards and have the functions in its product description.

准，具有其产品说明中的功能，若因产品质量瑕疵对第三方造成损害，甲方应当承担相应责任。

14.1.8  有假冒、仿造代理产品流入销售区域的，甲方应知道之日起三日内立即采取必要之救济途径，包括但不限于采取发送律师函、提起诉前行为保全、提起诉讼、提起刑事控告等的积极措施，以维护产品的正常销售。

14.2  甲方应尽积极自行推广或配合乙方推广目标系列产品在美国全境的知名度，如网站推广、广告投入、参加展会等。如有美国地区客户直接找到甲方要求采购目标系列电子烟的，甲方承诺不论订单大小，皆应引导美国地区客户向乙方采购，绝不允许甲方直接或通过除乙方外第三方向美国地区客户发货。

14.3  乙方的声明与保证
14.3.1  乙方签署和履行本合同所需的一切手续均已办妥并合法有效。
14.3.2  乙方为签署本合同所需的内部授权程序均已完成，本合同的签署是乙方法定代表人或者授权代表人。

14.3.3  乙方在代理期限内采取必要合理之营销方法，代理销售甲方的产品。

14.3.4  乙方不得以任何形式攻击甲方 HQD 品牌的其他型号产品，亦不得以甲方或 HQD 名义从事任何违法行为。

| 15.  费用的承担 |
| 15.1  甲方承担代理产品生产、制造、包装，乙方承担将代理产品发送至代理区域的运费及相应的营销费用。 |
| 15.2  乙方承担向 FDA 申请 PMTA 而花费的所有费用。该费用应如实告知甲方。 |
| 16.  违约责任 |
| 16.1  若甲方违反本合同第 15 条约定，致使代理产品流入代理区域的，甲方应按每支产品人民币 50 元的标准向乙方支付违约金。该违约金的赔偿标准甲方承诺不会以任何理由要求降低或减少。 |

If the product quality defect causes damage to a third party, Party A shall bear the corresponding responsibility.

14.1.8 If there are counterfeit agency products flowing into the sales area, Party A shall immediately take necessary remedies within three days from the date of knowing it, including but not limited to the active measures of sending a lawyer's letter, pre-sue behavior preservation, initiating legal proceedings, and initiating criminal prosecution to maintain the normal sale of products.

14.2 Party A shall actively promote or cooperate with Party B to promote the popularity of the agent products throughout the United States, such as website promotion, advertising investment, participation in exhibitions, etc. If a customer in the United States directly finds Party A and requests to purchase the agent products, Party A promises to forward customers in the United States to purchase from Party B, regardless of the size of the order, and will never allow Party A to sell to the United States directly or through a third party other than Party B Customer shipped.

14.3 Party B's Declarations and warranties
14.3.1 All formalities required by Party B to sign and perform this contract have been completed and are legal and valid.
14.3.2 The internal authorization procedures required by Party B for signing this contract have been completed, and the signing of this contract is the legal representative or authorized representative of Party B.
14.3.3 Party B shall adopt necessary and reasonable marketing methods within the agency period to sell Party A's products as an agent.
14.3.4 Party B shall not attack other models of Party A's HQD brand products in any way, and shall not engage in any illegal activities in the name of Party A or HQD.

**15. Bearing of expenses**
15.1 Party A is responsible for the production, manufacture and packaging of the agency products, and Party B is responsible for the freight and corresponding marketing expenses for sending the agency products to the agency area.
15.2 Party B shall bear all expenses incurred in applying for PMTA to FDA. The fee shall be truthfully informed to Party A.

**16. Liability for breach of contract**
16.1 If Party A violates the provisions of Article 15 of this contract, causing the agent products to flow into the agency area, Party A shall pay Party B a penalty of RMB 50 per piece. Party A promises that the compensation standard of the liquidated damages will not be reduced

**17. 合同终止**

17.1 除发生本合同约定的第 5 条第 1 款可销售情形，且甲方依法通知乙方撤销本合同的，本合同长期持续有效。

**18. 争议解决**

18.1 双方应本着互惠互利的原则协商解决本合同履行过程中产生的争议。若协商不成的，提交深圳国际经济贸易仲裁委员会进行仲裁。

**19. 通知及通讯信息**

19.1 本合同项下要求或允许的所有通知以及其他往来文件应以书面形式并通过邮寄送达本合同列明的联系地址，或通过电子邮件方式发送至指定邮箱。

**19.2 双方通讯信息**

甲方：

联系地址：深圳市光明区玉塘街道玉律工业区 A4 号厂房 2 楼

联系人：肖娇桂

联系电话：17727960820

电子邮箱：sofla@hqdtech.com

乙方：

联系地址：4365 Okeechobe blvd suit b9,West palm beach,Florida 33409.

联系人：Bijay Shrestha

联系电话：0015615028414

电子邮箱：nepawholesale@hotmail.com

**20. 其他**

20.1 本合同未尽事宜，双方可补充约定，补充协议与本合同具有同等效力。

20.2 本合同签订后，双方于 2020 年 6 月 29 日签订的《区域独家代理销售合同》解除，乙方已缴纳的保证金按本合同第 5 条约定处理。

20.3 本合同有中英文两种版本的，最终以中文版本为准。

**17. Termination of contract**

17.1 This contract will continue to be valid for a long time unless the saleable situation stipulated in Article 5, paragraph 1 of this contract occurs, and Party A notifies Party B to cancel this contract in accordance with the law.

**18. Dispute Resolution**

18.1 Both parties shall negotiate and resolve disputes arising from the performance of this contract based on the principle of mutual benefit. If the negotiation fails, it shall be submitted to Shenzhen International Court of Arbitration for arbitration.

**19. Notices and Communications**

19.1 All notices and other correspondence required or permitted under this contract shall be in writing and delivered by post to the contact address specified in this contract, or by e-mail to the designated mailbox.

19.2 Communication information between the two parties

Party A:

Contact address: 2nd Floor, Building A4, Yulu Industrial Zone, Yutang Street, Guangming District, Shenzhen

Contact: Xiao Jiaogui

Contact number: 17727960820

Email: sofla@hqdtech.com

Party B:

Contact address: 4365 Okeechobe blvd suit b9, West palm beach, Florida 33409.

Contact Person: Bijay Shrestha

Tel: 0015615028414

Email: nepawholesale@hotmail.com

**20. Other**

20.1 The annexes to this contract are an integral part of this contract and have the same effect as this contract.

20.2 After the signing of this contract, the "Regional Exclusive Agency Sales Contract" signed by both parties on June 29, 2020 shall be terminated, and the deposit paid by Party B shall be dealt with in accordance with Article 5 of this contract.

20.3 This contract has both Chinese and English versions, and the

| | |
|---|---|
| **20.4** 本合同受中华人民共和国法律管辖，并根据其法律规定进行解释。<br><br>**20.5** 本合同一式二份，双方各执一份，自双方盖章签字之日起成立。 | Chinese version shall prevail.<br><br>20.4 This contract is governed by the laws of the People's Republic of China and interpreted in accordance with its legal provisions.20.5<br><br>20.5 This contract is in duplicate, each party holds one copy, and it is established from the date of signature by both parties. |
| 甲方（盖章）：<br><br>法定代表人（签字）： | 乙方（盖章）：<br><br>法定代表人（签字）： | Party A (seal):<br><br>Legal representative (signature): | Party B (seal):<br><br>Legal representative (signature): |

# EXHIBIT "B"




REAL:



REAL:



# EXHIBIT "C"

**Nepa Wholesale INC.**
4365 Okeechobee Blvd
Unit B6
West Palm Beach, FL  33409
USA

Voice:  (561) 684-1107
Fax:    1-561-686-1225

# INVOICE

| | |
|---|---|
| Invoice Number: | 215151 |
| Invoice Date: | Mar 25, 2022 |
| Page: | 1 |

*Duplicate*

| Bill To: | Ship to: |
|---|---|
| SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL  33953<br>USA | SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL  33953<br>USA |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| SAFA3952 | | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| DONNY | Airborne | | 4/24/22 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 96.00 | 781159121760 | TKCA SQUID 5K 5% APPLE 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121357 | TKCA SQUID 5K 5% BANANA ICE 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121371 | TKCA SQUID 5K 5% BLACK ICE 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121364 | TKCA SQUID 5K 5% BLUE RAZZ 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121326 | TKCA SQUID 5K 5% BLUEBERRY 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121319 | TKCA SQUID 5K 5% BLUEBERRY LEMONADE 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121333 | TKCA SQUID 5K 5% GRAPE 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121746 | TKCA SQUID 5K 5% ICE MINT 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121340 | TKCA SQUID 5K 5% LUSH ICE 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| | 781159121494 | TKCA SQUID 5K 5% LYCHEE ICE 1X5PK DISPOSABLE | 46.25 | |
| 96.00 | 781159121395 | TKCA SQUID 5K 5% MANGO ICE 1X5PK | 32.50 | 3,120.00 |

| | | |
|---|---|---|
| Subtotal | | Continued |
| Sales Tax | | Continued |
| Total Invoice Amount | | Continued |
| Payment/Credit Applied | | 148,069.16 |
| **TOTAL** | | **Continued** |

Check/Credit Memo No: 215151

# **Nepa Wholesale INC.**

4365 Okeechobee Blvd
Unit B6
West Palm Beach, FL 33409
USA

Voice:   (561) 684-1107
Fax:      1-561-686-1225

# INVOICE

| | |
|---|---|
| Invoice Number: | 215151 |
| Invoice Date: | Mar 25, 2022 |
| Page: | 2 |

*Duplicate*

| Bill To: | Ship to: |
|---|---|
| SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL 33953<br>USA | SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL 33953<br>USA |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| SAFA3952 | | Net 30 Days | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| DONNY | Airborne | | 4/24/22 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | DISPOSABLE | | |
| 96.00 | 737547680326 | TKCA SQUID 5K 5% PURPLE PUNCH 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121753 | TKCA SQUID 5K 5% STRAWBERRY 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 781159121388 | TKCA SQUID 5K 5% STRAWBERRY LEMONADE 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 737547680449 | TKCA SQUID 5K 5% STRAWNANA 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 96.00 | 737547680500 | TKCA SQUID 5K 5% WATERMELON 1X5PK DISPOSABLE | 32.50 | 3,120.00 |
| 5.00 | 0605832085135 | TKCA SQUID 5K 5% DISPLAY 20CT | 650.00 | 3,250.00 |
| 60.00 | 6974548623004 | VIPER 5% MEGA BLUE RAZZ POMEGRANATE | 38.99 | 2,339.40 |
| 60.00 | 6974548623028 | VIPER 5% MEGA MINT ICE | 38.99 | 2,339.40 |
| 60.00 | 6974548622885 | VIPER 5% MEGA MIX BERRY | 38.99 | 2,339.40 |
| 60.00 | 6974548622977 | VIPER 5% MEGA PINEAPPLE LEMONADE | 38.99 | 2,339.40 |
| 60.00 | 6974548622991 | VIPER 5% MEGA RED APPLE ICE | 38.99 | 2,339.40 |
| 60.00 | 6974548622908 | VIPER 5% MEGA SOUR APPLE | 38.99 | 2,339.40 |
| 60.00 | 6974548622915 | VIPER 5% MEGA SOUR CANDY | 38.99 | 2,339.40 |
| 60.00 | 6974548622946 | VIPER 5% MEGA STRAWBERRY BANANA | 38.99 | 2,339.40 |

Check/Credit Memo No: 215151

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | 148,069.16 |
| **TOTAL** | **Continued** |

**Nepa Wholesale INC.**
4365 Okeechobee Blvd
Unit B6
West Palm Beach, FL  33409
USA

Voice:   (561) 684-1107
Fax:   1-561-686-1225

# INVOICE

| | |
|---|---|
| Invoice Number: | 215151 |
| Invoice Date: | Mar 25, 2022 |
| Page: | 3 |

*Duplicate*

| Bill To: | Ship to: |
|---|---|
| SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL  33953<br>USA | SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL  33953<br>USA |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| SAFA3952 | | Net 30 Days | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| DONNY | Airborne | | 4/24/22 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 60.00 | 6974548622922 | VIPER 5% MEGA STRAWBERRY COLADA | 38.99 | 2,339.40 |
| 60.00 | 6974548622939 | VIPER 5% MEGA STRAWBERRY KIWI | 38.99 | 2,339.40 |
| 60.00 | 6974548622953 | VIPER 5% MEGA STRAWBERRY WATERMELON | 38.99 | 2,339.40 |
| 60.00 | 6974548622984 | VIPER 5% MEGA TOBACCO COFFEE | 38.99 | 2,339.40 |
| 60.00 | 6974548622960 | VIPER 5% MEGA WATERMELON LEMONADE | 38.99 | 2,339.40 |
| 80.00 | 6974548623608 | VIPER 5% MINI BLUE RAZZ POMEGRANATE | 25.50 | 2,040.00 |
| 80.00 | 6974548623622 | VIPER 5% MINI MINT ICE | 25.50 | 2,040.00 |
| 80.00 | 6974548623486 | VIPER 5% MINI MIX BERRY | 25.50 | 2,040.00 |
| 80.00 | 6974548623578 | VIPER 5% MINI PINEAPPLE LEMONADE | 25.50 | 2,040.00 |
| 80.00 | 6974548623592 | VIPER 5% MINI RED APPLE ICE | 25.50 | 2,040.00 |
| 80.00 | 6974548623509 | VIPER 5% MINI SOUR APPLE | 25.50 | 2,040.00 |
| 80.00 | 6974548623516 | VIPER 5% MINI SOUR CANDY | 25.50 | 2,040.00 |
| 80.00 | 6974548623547 | VIPER 5% MINI STRAWBERRY BANANA | 25.50 | 2,040.00 |
| 80.00 | 6974548623523 | VIPER 5% MINI STRAWBERRY COLADA | 25.50 | 2,040.00 |
| 80.00 | 6974548623530 | VIPER 5% MINI STRAWBERRY KIWI | 25.50 | 2,040.00 |
| 80.00 | 6974548623585 | VIPER 5% MINI TOBACCO COFFEE | 25.50 | 2,040.00 |
| 80.00 | 6974548623561 | VIPER 5% MINI WATERMELON LEMONADE | 25.50 | 2,040.00 |

Check/Credit Memo No: 215151

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | 148,069.16 |
| **TOTAL** | **Continued** |

# Nepa Wholesale INC.

4365 Okeechobee Blvd
Unit B6
West Palm Beach, FL  33409
USA

Voice:   (561) 684-1107
Fax:     1-561-686-1225

# INVOICE

| | |
|---|---|
| Invoice Number: | 215151 |
| Invoice Date: | Mar 25, 2022 |
| Page: | 4 |

*Duplicate*

| Bill To: | Ship to: |
|---|---|
| SAFA GOODS LLC | SAFA GOODS LLC |
| 1212 Market Circle | 1212 Market Circle |
| PORT CHARLOTTE, FL  33953 | PORT CHARLOTTE, FL  33953 |
| USA | USA |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| SAFA3952 | | Net 30 Days | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| DONNY | Airborne | | 4/24/22 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 80.00 | 6974548623301 | VIPER 5% SUPER BLUE RAZZ POMEGRANATE | 29.99 | 2,399.20 |
| 80.00 | 6974548623325 | VIPER 5% SUPER MINT ICE | 29.99 | 2,399.20 |
| 80.00 | 6974548623189 | VIPER 5% SUPER MIX BERRY | 29.99 | 2,399.20 |
| 80.00 | 6974548623271 | VIPER 5% SUPER PINEAPPLE LEMONADE | 29.99 | 2,399.20 |
| 80.00 | 6974548623295 | VIPER 5% SUPER RED APPLE ICE | 29.99 | 2,399.20 |
| 80.00 | 6974548623202 | VIPER 5% SUPER SOUR APPLE | 29.99 | 2,399.20 |
| 80.00 | 6974548623219 | VIPER 5% SUPER SOUR CANDY | 29.99 | 2,399.20 |
| 80.00 | 6974548623240 | VIPER 5% SUPER STRAWBERRY BANANA | 29.99 | 2,399.20 |
| 80.00 | 6974548623226 | VIPER 5% SUPER STRAWBERRY COLADA | 29.99 | 2,399.20 |
| 80.00 | 6974548623233 | VIPER 5% SUPER STRAWBERRY KIWI | 29.99 | 2,399.20 |
| 80.00 | 6974548623257 | VIPER 5% SUPER STRAWBERRY WATERMELON | 29.99 | 2,399.20 |
| 80.00 | 6974548623288 | VIPER 5% SUPER TOBACCO COFFEE | 29.99 | 2,399.20 |
| 80.00 | 6974548623264 | VIPER 5% SUPER WATERMELON LEMONADE | 29.99 | 2,399.20 |
| 32.00 | 850023213860 | BROCONE (1B) 1 1/4 32 PACKS PER BOX Southeastern Freight Lines | 22.33 | 714.56 |

Check/Credit Memo No: 215151

| | |
|---|---|
| Subtotal | Continued |
| Sales Tax | Continued |
| Total Invoice Amount | Continued |
| Payment/Credit Applied | 148,069.16 |
| **TOTAL** | **Continued** |

# Nepa Wholesale INC.
4365 Okeechobee Blvd
Unit B6
West Palm Beach, FL  33409
USA

Voice:   (561) 684-1107
Fax:     1-561-686-1225

# INVOICE

| | |
|---|---|
| Invoice Number: | 215151 |
| Invoice Date: | Mar 25, 2022 |
| Page: | 5 |

*Duplicate*

| Bill To: | Ship to: |
|---|---|
| SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL  33953<br>USA | SAFA GOODS LLC<br>1212 Market Circle<br>PORT CHARLOTTE, FL  33953<br>USA |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| SAFA3952 | | Net 30 Days | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| DONNY | Airborne | | 4/24/22 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| -1.00 | SHIPPING | SHIPPING CREDIT<br>Bill of Lading Number : 173089434<br>PRO#: 747215642 | 786.54 | -786.54 |

| | |
|---|---|
| Subtotal | 136,059.82 |
| Sales Tax | |
| Total Invoice Amount | 136,846.36 |
| Payment/Credit Applied | 148,069.16 |
| **TOTAL** | **-11,222.80** |

Check/Credit Memo No: 215151

# EXHIBIT "D"

8:11

<    Safa Goods – Order 4...   ∧   ∨

Order Details

**Order ID:** 43025
**Date Added:** 10/27/2023
**Payment Method:** Credit Card /
Debit Card (Authorize.Net)
**Shipping Method:** Florida Shipping

**E-mail:**
shqair27@gmail.
com
**Telephone:**
786-403-6641
**IP Address:**
66.229.242.184
**Order Status:**
Pending

| Payment Address | Shipping Address |
|---|---|
| Qusai Shqair<br>132 NE 2nd Ave<br>Miami, FL 33132<br>United States | Qusai Shqair<br>132 NE 2nd Ave<br>Miami, FL 33132<br>United States |

| Product | Model | Quantity | Price | Total |
|---|---|---|---|---|
| HQD Cuvie Plus Disposables [1200 PUFFS] 6PC - HQD Cuvie Flavors: Black Ice (SKU: HQD-.. | HQD-CP- | 9 | $34.99 | $314.91 |

| | | |
|---|---|---|
| **Sub-Total:** | $314.91 |
| **Florida Shipping:** | $15.00 |
| **Total:** | $329.91 |

Please reply to this e-mail if you have any questions.

# EXHIBIT "E"







# EXHIBIT "F"

















# EXHIBIT "G"

























# EXHIBIT "H"

KITS  PIPES  WAX VAPES  PAPERS & CIGARS  TRAYS

- Strawberry Lemonade
- **Strawberry Watermelon**

| Qty | Stock QTY: | HQD Cuvie Flavors | Price |
|---|---|---|---|
| 0 | 0 | *Apple Peach (SKU: HQD-CP-AP )* | |
| 0 | 0 | *Banana Ice (SKU: HQD-CP-BANI )* | |
| 0 | 412 | **Black Ice (SKU: HQD-CP-BI )** | |
| 0 | 175 | **Blueberry (SKU: HQD-CP-BB )** | |
| 0 | 0 | *Blueberry Lemonade (SKU: HQD-CP-BBL )* | |
| 0 | 199 | **Blueberry Raspberry (SKU: HQD-CP-BBR )** | |
| 0 | 0 | *Candy (SKU: HQD-CP-CAND )* | |
| 0 | 25 | **Cotton Candy (SKU: HQD-CP-CC )** | |
| 0 | 1 | **Energy Drink (SKU: HQD-CP-ED )** | |
| 0 | 11 | **Fresh Berries (SKU: HQD-CP-FB )** | |
| 0 | 0 | *Fruit Fusion (SKU: HQD-CP-FF )* | |
| 0 | 9 | **Grape Currant (SKU: HQD-CP-GC )** | |
| 0 | 1 | **Grapey (SKU: HQD-CP-GRA )** | |
| 0 | 3 | **Honey Crisp Apple (SKU: HQD-CP-HCA )** | |
| 0 | 1 | **Honey Lychee (SKU: HQD-CP-HL )** | |
| 0 | 6 | **Ice Mint (SKU: HQD-CP-IM )** | |
| 0 | 21 | **Kiwi Pomegranate (SKU: HQD-CP-KP )** | |



# EXHIBIT "I"

















# EXHIBIT "J"

# United States of America
## United States Patent and Trademark Office

# CUVIE

**Reg. No. 7,165,966**

**Registered Sep. 12, 2023**

**Int. Cl.: 34**

**Trademark**

**Principal Register**

NEPA WHOLESALE INC  (FLORIDA CORPORATION)
4365 OKEECHOBEE BLVD
Bay 9
WEST PALM BEACH, FLORIDA 33409

CLASS 34: Electronic cigarettes and oral vaporizers for smokers; Electronic cigarettes for use as an alternative to traditional cigarettes; Mechanical electronic cigarettes

FIRST USE 7-20-2020; IN COMMERCE 7-20-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 97-370,310, FILED 04-19-2022

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office



REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT "K"

# United States of America
## United States Patent and Trademark Office

# CUVIE AIR

**Reg. No. 7,025,651**

**Registered Apr. 11, 2023**

**Int. Cl.: 34**

**Trademark**

**Principal Register**

NEPA WHOLESALE INC  (FLORIDA CORPORATION)
SUITE B9
4365 OKEECHOBEE BLVD
WEST PALM BEACH, FLORIDA 33409

CLASS 34: Electronic cigarettes and oral vaporizers for smokers; Electronic cigarettes for use as an alternative to traditional cigarettes; Smokers' mouthpieces for electronic cigarettes

FIRST USE 8-11-2021; IN COMMERCE 8-11-2021

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 97-378,124, FILED 04-23-2022



*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO.  To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT "L"

# United States of America
## United States Patent and Trademark Office

# CUVIE PLUS

**Reg. No. 7,025,650**

**Registered Apr. 11, 2023**

**Int. Cl.: 34**

**Trademark**

**Principal Register**

NEPA WHOLESALE INC  (FLORIDA CORPORATION)
SUITE B9
4365 OKEECHOBEE BLVD
WEST PALM BEACH, FLORIDA 33409

CLASS 34: Electronic cigarettes and oral vaporizers for smokers; Electronic cigarettes for use as an alternative to traditional cigarettes; Smokers' mouthpieces for electronic cigarettes

FIRST USE 7-10-2020; IN COMMERCE 7-10-2020

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 97-378,101, FILED 04-23-2022



*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an  Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO).  The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO.  To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT "M"

| | |
|---|---|
| **From:** | TMOfficialNotices@USPTO.GOV |
| **Sent:** | Tuesday, March 21, 2023 00:21 AM |
| **To:** | LtsILP.ip@Gmail.com |
| **Cc:** | NEPAWPB@GMAIL.COM |
| **Subject:** | Official USPTO Notice of Allowance: U.S. Trademark SN 97378110: CUVIE PRO |

NOTICE OF ALLOWANCE (NOA)

ISSUE DATE: Mar 21, 2023

**U.S. Serial Number:**  97378110
**Mark:**  CUVIE PRO
**Docket/Reference Number:**

No opposition was filed for this published application.  The issue date of this NOA establishes the due date for the filing of a Statement of Use (SOU) or a Request for Extension of Time to file a Statement of Use (Extension Request).  **WARNING: An SOU that meets all legal requirements must be filed before a registration certificate can issue.  Please read below for important information regarding the applicant's pending six (6) month deadline.**

**SIX (6)-MONTH DEADLINE: Applicant has six (6) MONTHS from the NOA issue date to file either:**
-   An SOU, if the applicant is using the mark in commerce (required even if the applicant was using the mark at the time of filing the application, if use basis was not specified originally);  **OR**
-   An Extension Request, if the applicant is not yet using the mark in commerce.  If an Extension Request is filed, a new request may be filed every six (6) months until the SOU is filed.  The applicant may file a total of five (5) extension requests.  **WARNING:** An SOU may **not** be filed more than thirty-six (36) months from when the NOA issued.  The deadline for filing is always calculated from the issue date of the NOA.

**How to file SOU and/or Extension Request:**
Use the Trademark Electronic Application System (TEAS).  Do **NOT** reply to this e-mail, as e-mailed filings will **NOT** be processed.  Both the SOU and Extension Request have many legal requirements, including fees and verified statements; therefore, please use the USPTO forms available online at https://www.uspto.gov/trademarks-application-process/filing-online (under the "INTENT-TO-USE (ITU) FORMS" category) to avoid the possible omission of required information.  If you have questions about this notice, please contact the Trademark Assistance Center at 1-800-786-9199.

For information on how to (1) divide an application; (2) delete goods/services (or entire class) with a Section 1(b) basis; or (3) change filing basis, see https://www.uspto.gov/trademarks-getting-started/process-overview/additional-information-post-notice-allowance-process.

**FAILURE TO FILE A REQUIRED DOCUMENT OUTLINED ABOVE DURING THE APPROPRIATE TIME PERIOD WILL RESULT IN THE ABANDONMENT OF THIS APPLICATION.**

**REVIEW APPLICATION INFORMATION FOR ACCURACY**

If you believe this NOA should not have issued or correction of the information shown below is needed, you must submit a request to the Intent-to-Use Unit.  Please use the "Post-Publication Amendment" form under the "POST-APPROVAL/PUBLICATION/POST NOTICE OF ALLOWANCE (NOA) AMENDMENT FORMS" category, available at https://www.uspto.gov/trademarks-application-process/filing-online/post-approvalpublicationpost-notice-allowance-noa.  Do **NOT** reply to this e-mail, as e-mailed filings will NOT be processed.

| | |
|---|---|
| **Serial Number:** | 97378110 |
| **Mark:** | CUVIE PRO |
| **Docket/Reference Number:** | |
| **Owner:** | NEPA WHOLESALE INC |
| | SUITE B9 |
| | 4365 OKEECHOBEE BLVD |
| | WEST PALM BEACH , FLORIDA   33409 |
| **Correspondence Address:** | Lillian Taylor Stajnbaher |
| | International Law Partners LLP |
| | 2122 Hollywood Blvd |
| | Hollywood FL 33020 |

This application has the following bases, but not necessarily for all listed goods/services:
     Section 1(a): NO                     Section 1(b): YES                   Section 44(e): NO

**GOODS/SERVICES BY INTERNATIONAL CLASS**

034 -    Electronic cigarettes and oral vaporizers for smokers; Electronic cigarettes for use as an alternative to traditional cigarettes; Smokers' mouthpieces for electronic cigarettes -- FIRST USE DATE: NONE; -- USE IN COMMERCE DATE: NONE

**ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED.**

**Appropriate Specimens for Goods and/or Services:** A trademark specimen should be a label, tag, or container for the goods, or a display associated with the goods. See TMEP §§904.03 et seq. A service mark specimen should be an advertisement, sign, brochure, website printout or other image that shows the mark used in the actual sale or advertising of the services. See TMEP §§1301.04 et seq. For an instructional video on what is an appropriate trademark or service mark specimen for a good and/or service, click here.

**Fraudulent statements may result in registration being cancelled:** Applicants must ensure that statements made in filings to the USPTO are accurate, as inaccuracies may result in the cancellation of any issued trademark registration.  The lack of a bona fide intention to use the mark with ALL goods and/or services listed in an application or the lack of actual use on all goods and/or services for which use is claimed could jeopardize the validity of the registration, possibly resulting in its cancellation.

**Additional information:** For information on filing and maintenance requirements for U.S. trademark applications and registrations and required fees, please consult the USPTO website at https://www.uspto.gov or call the Trademark Assistance Center at 1-800-786-9199.

**Checking status:** To check the status of this application, go to https://tsdr.uspto.gov/#caseNumber=97378110&caseSearchType=US_APPLICATION&caseType=SERIAL_NO&searchType=statusSearch  or contact the Trademark Assistance Center at 1-800-786-9199.  Please check the status of any application at least every three (3) months after the application filing date.

To view this notice and other documents for this application on-line, go to https://tsdr.uspto.gov/#caseNumber=97378110&caseSearchType=US_APPLICATION&caseType=SERIAL_NO&searchType=documentSearch.  NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

# EXHIBIT "N"

**Colorado**
Secretary of State
Jena Griswold

Skip to content  |  About Secretary Griswold  |  Español

**For this Record...**
File a form
Subscribe to email notification
Unsubscribe from email notification
Return to Summary
Subscribe to text notification
Unsubscribe from text notification

Business Home
Business Information
Business Search

FAQs, Glossary and Information

# History and Documents

**Name**:  HQD CUVIE PLUS
**ID number**: 20231905394

Print-friendly version

**Found 1 matching record(s).  Viewing page 1 of 1.**

| # | Event | Date Filed | Date Posted | Effective Date ▲ | Document # (click to view) | Comment |
|---|-------|-----------|-------------|------------------|----------------------------|---------|
| 1 | Trademark Registration | 08/28/2023 | 08/28/2023 | 08/28/2023 09:00 PM | 20231905394 | |

Return to Summary

Terms & conditions | Accessibility statement | Browser compatibility

# SECRETARY OF STATE

**Corporations Division**
**313 West Tower**
**2 Martin Luther King Jr. Dr.**
**Atlanta, Georgia 30334-1530**

| | | |
|---|---|---|
| **REGISTRATION NO.** | : | T-32037 |
| **MARK TYPE** | : | TRADEMARK |
| **REGISTRATION DATE** | : | 09/05/2023 |
| **EXPIRATION DATE** | : | 09/05/2033 |
| **DATE MARK FIRST USED** | : | 07/10/2020 |
| **DATE FIRST USED IN GEORGIA** | : | 09/24/2020 |

## CERTIFICATE OF REGISTRATION

I, Brad Raffensperger, Secretary of State of Georgia, do hereby certify under seal of my office, that the mark identified and described below has been registered under the laws of Georgia for a period of ten years, the dates of registration and expiration as shown above. A facsimile of said mark is attached and recorded:

**MARK:**    HQD CUVIE PLUS

**CLASS:**  8

**MARK DESCRIPTION:**
THE WORDS "HQD CUVIE PLUS" IN STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE, OR COLOR.

**This mark is used in connection with:**
ELECTRONIC CIGARETTES; ORAL VAPORIZERS FOR SMOKERS

**REGISTRANT:**

NEPA WHOLESALE INC
4365 Okeechobee Blvd
B6/B7
West Palm Beach, FL 33409
**State of Formation**: Florida

WITNESS my hand and official seal at the Capitol, in the City of Atlanta and the State of Georgia on 09/29/2023.



Brad Raffensperger
Secretary of State

**OFFICE OF SECRETARY OF STATE**
CORPORATIONS DIVISION
2 Martin Luther King Jr. Dr. SE
Suite 313 West Tower
Atlanta, Georgia 30334
(404) 656-2817
http://sos.ga.gov/

Secretary of State

RECEIVED
SECRETARY OF STATE
INTAKE DIVISION

2023 SEP -5 AM 8: 15

## APPLICATION FOR REGISTRATION
## TRADEMARK OR SERVICE MARK

DO NOT WRITE IN SHADED AREA - SOS USE ONLY

| INTAKE DATE: | INTAKE INITIALS: | AMOUNT RECEIVED: | CHECK #/ M.O. #/ CC: |
|---|---|---|---|

NOTICE TO APPLICANT: SEE GENERAL INSTRUCTIONS FOR COMPLETING THIS APPLICATION.

In compliance with O.C.G.A. §§10-1-440 et seq., the undersigned, having adopted and used a trademark or service mark in this State and desiring to file the same for public record in the Office of the Secretary of State of Georgia, does hereby certify, under penalty of perjury, the following:

1. NEPA WHOLESALE INC
   Name of Applicant

2. 4365 OKEECHOBEE BLVD B6/B7     WEST PALM BEACH    FL    33409
   Principal Business Address       City      State     Zip Code

   Mailing Address (if different from principal business address)     City     State    Zip Code

3. If applicant is an entity, please indicate the state of incorporation/formation/organization:   Florida

4. Describe the mark. The description you provide is the way the mark will be registered. *(Attach additional sheet if necessary)*
   HQD CUVIE PLUS - The mark consists of standard characters without claim to any particular font style, size, or color

5. Disclaimer (if applicable): No claim is made to the exclusive right to use:      apart from the mark as shown.

6. (a) If a trademark, what goods are offered or sold under the mark? OR (b) If a service mark, what services are provided under the mark?
   Electronic cigarettes; oral vaporizers

7. Class No: 34     (A separate application must be filed for each class in which a registration of the mark is sought.)

8. Date of first use of the mark by applicant, predecessor, or licensee. (Give month, day and year.)
   (a) Anywhere: JULY 10, 2020      (b) In Georgia: 9/24/20

9. Mode or manner in which the mark is used in connection with identified (a) goods or (b) services. Check all that apply in either (a) or (b):

   (a) Trademark: ☐ To tags/labels affixed to goods   ☑ To tags/labels affixed to containers of goods   ☐ Directly to containers of goods
         ☐ Directly to goods      ☐ Other:

   (b) Service Mark: ☐ Advertising brochures    ☐ Advertising leaflets/flyers    ☐ Newspaper advertisements
         ☐ Signs      ☐ Business cards     ☐ Menus
         ☐ Other:

10. The applicant is the owner of the mark described herein, the mark is in use, the specimens filed herewith are true and correct, and, to the best of his/her knowledge, no other person except the applicant has the right to use such mark in this State either in its identical form or in such near resemblance as to be likely, when applied to the goods or services of such other person, to cause confusion or mistake, or to deceive.

Signature of Applicant: _____    Print Name: LILLIAN TAYLOR STAJNBAHER

Official Title (if signing for an entity): ATTORNEY OF RECORD    Date: 8/27/23

Email: lstajnbaher@tmdi.law    Secondary Email:

Mail or deliver to the Secretary of State, at the above address, the following:
1) This completed application.
2) Three (3) specimens of the mark as currently used. May be 3 samples of the same specimen. (See General Instructions)
3) A drawing page showing only the mark on an 8 ½ x 11 white sheet of paper.
4) A filing fee of $15.00 payable to the Secretary of State. Filing fees are non-refundable and non-transferable.

Keep a copy of your submitted application, specimens, and drawing page for your records.

HQD CUVIE PLUS





HQD

## HQD Cuvie Plus Nicotine

### $14.99

Flavor: *

Apple Peach

Banana Ice

Black Ice

Blueberry Raspberry

Energy Drink

Grapey

Iced Mint

Lush Ice



HQD

## HQD Cuvie Plus Nicotine

### $14.99

Flavor: *

- Apple Peach
- Banana Ice
- Black Ice
- Blueberry Raspberry
- Energy Drink
- Grapey
- Iced Mint
- Lush Ice

HQD CUVIE PLUS



**OFFICE OF THE SECRETARY OF STATE**

**STATE OF OKLAHOMA**

## CERTIFICATE OF TRADEMARK REGISTRATION

**<u>HQD CUVIE PLUS - THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE, OR COLOR</u>**

**REGISTRATION NO. <u>13444022</u>     EXPIRES: <u>August 31, 2033</u>**

     ***WHEREAS****, by virtue of its Application for Registration, such trademark has been filed in Class No.<u>17</u>  and the good or services upon which the trademark is used are **<u>ELECTRONIC CIGARETTES; ORAL VAPORIZERS</u>***

     ***NOW THEREFORE, I,*** *the undersigned Secretary of State of the State of Oklahoma, by virtue of the powers vested in me by law, do hereby issue this Certificate to evidence such registration.*

     ***IN TESTIMONY WHEREOF, I*** *hereunto set my hand and cause to be affixed the Great Seal of the State of Oklahoma.*



*Filed in the City of Oklahoma this <u>31st</u> day of <u>August, 2023</u>.*

*Secretary Of State*





STATE OF OREGON 1859

## Trade and Service Marks - Registration

Secretary of State - Corporation Division - 255 Capitol St. NE, Suite 151 - Salem, OR 97310-1327 - sos.oregon.gov/business - Phone: (503) 986-2200

FILED

SEP 14 2023

OREGON SECRETARY OF STATE

For office use only

REGISTRY NUMBER: 52681

For office use only

In accordance with Oregon Revised Statute 192.410-192.490, the information on this application is public record. We must release this information to all parties upon request.

Please Type or Print Legibly in **Black** ink. Attach additional Sheets if Necessary.

1) CORRESPONDENT NAME: LILLIAN TAYLOR STAJNBAHER

MAILING ADDRESS: 2122 Hollywood Blvd, HOLLYWOOD, FL, 33020

2) APPLICANT'S NAME: (Owner: ☐ Individual or ☑ Entity) NEPA 2 WHOLESALE INC

ADDRESS: 3220 45th Street, West Palm Beach, FL 33407

3) IF THE APPLICANT IS AN ENTITY, ENTER THE STATE OF FORMATION:

FL

4) IF ENTITY IS A PARTNERSHIP, LIST NAMES OF GENERAL PARTNERS:

5) DESCRIPTION OF TRADE OR SERVICE MARK: (Include all words, designs and borders that comprise the mark) (**Attach additional page if needed.**)

HQD CUVIE PLUS - The mark consists of standard characters without claim to any particular font style,

6) SPECIMEN OF MARK IS REQUIRED: ☑ Attach a drawing or photocopy of the mark as it is actually used to this application.

7) GOODS OR SERVICES WITH WHICH THE MARK IS USED: (Examples of goods are pizzas, shirts; examples of services are serving food and selling clothing.)

Electronic cigarettes; oral vaporizers

8) EXPLAIN MODE OR MANNER IN WHICH THE MARK IS USED: (Example: on goods, tags, labels, containers, etc.)

On packaging for the goods

9) CLASS NUMBER(S) OF GOODS OR SERVICES: (See form 290-a)

134

10) DATE (MONTH, DAY, YEAR) MARK WAS FIRST USED ANYWHERE BY APPLICANT OR APPLICANT'S PREDECESSOR IN INTEREST:

07/10/2020

11) DATE (MONTH, DAY, YEAR) MARK WAS FIRST USED IN OREGON BY APPLICANT OR APPLICANT'S PREDECESSOR IN INTEREST:

09/09/2021

12) EXECUTION:

I, the applicant, own the mark, the mark is in use, and no other person has registered the mark with the federal government or in Oregon or has the right to use the mark or a mark that so resembles the mark as to be likely to cause confusion or mistake or deceive when applied to the goods or services of the other person. I declare under penalties of perjury that this application is true, correct and complete.

(If applicant is an entity, a member of a firm, officer of the corporation, officer of the limited liability company, or officer of an association must sign.)

Signature: [signature] Title: attorney of record Date: 8/22/23

CONTACT NAME: (To resolve questions with this filing.)

LILLIAN TAYLOR STAJNBAHER

PHONE NUMBER: (Include area code.)

954 319-3153

F

Re

Pr

52681

Rhode Island Department of State
**Gregg M. Amore**
Secretary of State

HOME      BUSINESS SERVICES      ELECTIONS      CIVICS AND EDUCATION

## Trademark Search

| Application for Registration of a Trademark |
|---|

| Registration: 202309000 | Date: 09-06-2023 | Expiration date: 09-06-2033 |
|---|---|---|

### Registration information:

| Action: **Registration** |
|---|

| Name of Registrant:   NEPA 2 WHOLESALE INC |
|---|

| **Address:** |
|---|
| **Business name:** (if different): |
| **Street (line 1):** 3220 45TH STREET |
| **Street (line 2):** |
| **City or town, State, Zip code, Country:** WEST PALM BEACH,   FL   33407 |

| **Applicant type:** |
|---|
| ☐ Individual       ☑ Corporation       ☐ Limited Liability Company       ☐ Limited Partnership |
| ☐ Partnership       ☐ Sole Proprietor       ☐ Other: |
| Other: |

| If a business entity, the State/Country of organization is: FL |
|---|

| **Description of mark:** HQD CUVIE PLUS - THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE, OR COLOR |
|---|

| **Description of the specific goods or services in connection with which the mark is used:** |
|---|
| ELECTRONIC CIGARETTES; ORAL VAPORIZERS |

| **Class Number:** 34 |
|---|

| **Date of first use of mark: (a) Anywhere:** 07-10-2020   **(b) In Rhode Island:** 06-05-2021 |
|---|

### Registration history information:

| Trans. Type | Reg. No. | Date | Registrant | Address | Type | Image |
|---|---|---|---|---|---|---|
| Registration | 202309000 | 09-06-2023 | NEPA 2 WHOLESALE INC | 3220 45TH STREET , WEST PALM BEACH, FL 33407 | Corporation | **TRAD202309000_1.pdf** |

Back to Search

Business Services Division  |         Rhode Island Department of State



VERMONT *Secretary of State*  CORPORATIONS DIVISION  Vermont Secretary of State, **Sarah Copeland Hanzas**

 HOME

Back

## Trademark Information

### Trademark Details

| | | | |
|---|---|---|---|
| **Trademark Name:** | HQD CUVIE PLUS | **File #:** | M0009289 |
| **Trademark Type:** | Word Mark | **Trademark Status:** | Active |
| **Registration Date:** | 8/30/2023 | **First Adoption Date:** | 7/10/2020 |
| **Expiration Date:** | 8/30/2033 | **Last Filing Date:** | |
| **Description of Mark:** | HQD CUVIE PLUS - The mark consists of standard characters without claim to any particular font style, size, or color | | |
| **Mode of Use:** | On packaging for the goods | | |

### Picture, Sketch, or Copy of the Trademark Itself

| S.No | File Name | Description |
|---|---|---|
| 1 | HQD CUVIE PLUS..jpg | |

**Page 1 of 1, records 1 to 1 of 1**

### Product Description

Description of Goods :   Electronic cigarettes; oral vaporizers

### Merchandise Class Code(s)

| S.No. | Merchandise Class Code |
|---|---|
| 1 | Class 34 - Smoker's Products |

### Picture, Sketch, or Copy of the Goods that the Trademark is to Represent

| S.No | File Name | Description |
|---|---|---|
| 2 | HQDCUVIEPLUSspecimen.png | |

**Page 1 of 1, records 1 to 1 of 1**

## Ownership Information

Name : **NEPA 2 WHOLESALE INC**

Street Address : **3220 45th Street, WEST PALM BEACH, FL, 33407, USA**

Mailing Address : **3220 45th Street, WEST PALM BEACH, FL, 33407, USA**

Email : **info@nepawholesale.com**

Type : **UnRegistered Entity**

General Nature of Owner's Business :

| NAICS Code | NAICS SubCode |
|---|---|
| 42-Wholesale Trade | 4940-Tobacco and Tobacco Product Merchant Wholesalers |

## Registered Business

No registered business entities associated with this registration

Back     Filing History     Return to Search



# State of West Virginia

## CERTIFICATE OF TRADEMARK

An application and true copies of a trademark have been filed in my office. The name and address of the entity/individual claiming ownership of said mark is:

**Nepa 2 Wholesale Inc**
**3220 45th St**
**West Palm Beach FL 33407**

The date claimed for the first use of the mark anywhere is: **07/10/2020**

The date claimed for the first use of the mark in West Virginia is: **06/30/2022**

The class of goods or services is: **34**

The date of expiration for the term of 10 years is: **09/18/2033**

The description of the mark and goods/services:
**HQV Cuvie Plus - The mark consists of standard characters without claim to any particular font style, size, or color**

https://erls.wvsos.gov

The application is found to conform to the requirements of Chapter 47 of the West Virginia Code.Therefore, I hereby issue this

## TRADEMARK
202300006436-28

*Mac Warner*

Mac Warner
West Virginia Secretary Of State
Monday, September 18, 2023

Secretary of State
Bldg.1, Suite 157-K
1900 Kanawha Blvd. East
Charleston, WV 25305-0770

**202300006436-28**

**Phone:** 304-558-6000
866-767-8683
**Visit us online:**
www.wvsos.com

# EXHIBIT "O"

# United States of America

## United States Patent and Trademark Office

# HQD

**Reg. No. 5,778,947**

**Registered Jun. 18, 2019**

**Int. Cl.: 34**

**Trademark**

**Principal Register**

Shenzhen HQD Technology Co., Ltd.  (CHINA LIMITED LIABILITY COMPANY)
302,bldg.e,minle technology park,meiban
Ave.,minzhi st.,longhua new dist.,
Shenzhen, CHINA 518000

CLASS 34: Cigarette holders; Cigarettes containing tobacco substitutes, not for medical purposes; Electronic cigarette boxes; Electronic cigarettes; Electronic hookahs; Electronic cigars; Electronic smoking pipes; Flavorings, other than essential oils, for use in electronic cigarettes; Liquid nicotine solutions for use in electronic cigarettes; Oral vaporizers for smokers; Tobacco pipes; Electronic cigarettes for use as an alternative to traditional cigarettes

FIRST USE 10-11-2015; IN COMMERCE 10-11-2015

The mark consists of the stylized wording "HQD".

SER. NO. 87-883,385, FILED 04-19-2018



Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT "P"

